OWENS *v.* STATE.

(In Banc. Dec. 17, 1923.)

[98 South. 233. No. 23717.]

1. FORMER RULING REAFFIRMED.

     *Tucker* v. *State*, 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377, holding that evidence secured against a defendant in violation of section

23 of the Constitution of 1890, prohibiting unreasonable searches and seizures, could not be used against him in a criminal prosecution, re-examined and reaffirmed.

2. CRIMINAL LAW. *Evidence secured by unlawful search incompetent.*

Evidence on behalf of the state against a defendant, convicted of having a still in his possession for the manufacture of intoxicating liquors, which evidence was secured as' the result of the search of his dwelling without a search warrant in violation of section 23 of the Constitution of 1890, was incompetent.

SMITH, C. J., dissenting.

Appeal from circuit court of Lamar county.

HON. J. Q. LANGSTON, Judge.

Ned Owens was convicted of the unlawful possession of a still, and he appeals. Reversed and remanded.

*Salter & Coleman,* for appellant.

We think that the only questions involved in this appeal have to do, and deal with the validity of the affidavit and search warrant, and the court's action in permitting the state to introduce evidence, over defendant's objection and protest, obtained under the search warrant.

The court will note from the testimony of W. E. Miller, justice of the peace, and who issued the search warrant, that there was no description of the premises, whatever, in either the affidavit or the search warrant. There was nothing in either document to show where the premises of Lonny Williams, to be searched, were located, whether in Purvis, Lumberton, Hattiesburg, or Columbia, and that the search warrant specifically directed and attempted to authorize the search of the premises of Lonny Williams, and not of Ned Owens, the defendant (appellant).

We most respectfully submit that the state's evidence shows conclusively that both the affidavit and the search

warrant, based thereupon, are null and void even as to Lonny Williams. We think that the rule is universal that the description in the affidavit and also in the search warrant must be as specific as required in a deed of conveyance of such property. It must be so specific that the officer into whose hands the writ is placed for execution, can locate the property without the aid of extrinsic evidence. We are unable to find where this precise question has ever been before our appellate court, but as stated above, we find that the rule stated, as to the requirement of specific description of the property to be searched, is universal. We do not feel that the citation of authorities is necessary to sustain this contention, and simply refer the court to the "notes" to *Rose* v. *State,* 17 Ann. Cases, pages 228 to 236. But we would further direct the attention of the court to the case of *Larthet* v. *Forgay,* 46 Am. Dec. 554, cited in the notes referred to. This case is particularly applicable to the case at bar in that under the search warrant in the instant case, the officers searched the premises of Lonny Williams near the G. and S. I. Depot, and also the home of the appellant, three-fourths of a mile away, and where Lonny Williams had never lived, but where she spent a week in April prior to the issuance of the search warrant against her.

We submit that under the well established, if not universal rule of law, referred to and sustained by the authorities cited, it is inconceivable how any court can sustain the validity of a search warrant which does not even attempt to specifically describe the premises to be searched, and which is so vague and indefinite as to leave the officer unable to determine therefrom, whether the premises to be searched are in Lamar, Forrest, or Marion counties. It is clear from the testimony of Mr. Cain, the deputy sheriff, who executed the writ, that he could not locate the premises from the writ itself, but was forced to, and did resort to extrinsic evidence to determine what property was intended to be searched.

He says that he located the house to be searched from evidence given him by the negro man who had been accused of shooting Lonny Williams, and also from the information furnished him by S. E. Slade, marshal of Lumberton. Permit us to call the court's attention to the fact that the record discloses the fact that the officer holding the writ to search Lonny Williams' premises, knew at the time he invaded the home of the appellant, that Lonny Williams did not live there nor occupy said premises, but that the same was the home of Ned Owens, and that Lonny Williams' premises which the writ attempted to direct to be searched, was three-fourths of a mile distant, at the G. and S. I. Depot.

We most respectfully submit that taking into consideration section 23 of the state Constitution, the universal rule of law, construing the requirements of the provisions of the constitutions of other states, as to the specific description of property to be searched, required in the affidavit and search warrant, the same and all proceedings thereunder are null and void as against Ned Owens, appellant. Surely it cannot be seriously contended that appellant's constitutional rights under section 23, are not violated, by entering his home, and castle, known to be such by the officers, so intruding, under a writ directing them to search the premises of a third party. If the officers could enter Ned Owens' home under this writ and obtain evidence against him, under the circumstances disclosed by this record, then section 23 of the Constitution is a nullity.

We submit that as to this appellant, the search was made without a search warrant, and that the evidence obtained against him was illegally obtained, and should not have been admitted in evidence. This court has settled this proposition. *Tucker* v. *State,* 128 Miss. 211. And while this decision has been attacked, time after time, it is adhered to, and repeatedly affirmed as the law of the state. A citation of the later cases upholding this doctrine is unnecessary and will serve no purpose.

We most urgently insist that the court should not have permitted the state to introduce the evidence of its witnesses over defendant's (appellant's) objections; that it should have sustained the motion to exclude the state's evidence and that it should have sustained defendant's motion for a peremptory instruction to find him not guilty. There is no scintilla of evidence against him except that obtained under and as a result of a flagrant violation of his constitutional rights.

It is of far more importance and grave concern that the Constitutional rights of the masses be safeguarded and protected than that in a few isolated cases, the guilty go unpunished and unwhipped of justice. *State* v. *Patterson,* 95 So. 96. We submit that defendants charged and tried for violation of the prohibition laws, are entitled to the same fair and impartial trials and legal procedure as persons charged with other crimes, and that when circuit courts and prosecuting officers realize that our court of last resort stands immovable for safeguarding the Constitution, it will have much effect in "sobering" these officials from the effect of the mania which possesses the masses at the present time against persons charged with violations of the prohibition laws.

*S. C. Broom,* Special Assistant Attorney-General, for the state.

This is a case involving the law of search and seizure. The questions that will probably arise in a consideration of the case are as follows: 1. What constitutes a sufficient description of the property to be searched? 2. Is evidence unlawfully obtained admissible under any circumstances on the trial of the case?

*Theory of the defense.* Section 23 of the Constitution of the state of Mississippi is as follows: "The people shall be secure in their persons, houses and possessions,

from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized."

The defendant contends that the place to be searched was not specially designated within the meaning of this section, and that, therefore, it was an unreasonable search and seizure within the meaning of said section, hence an illegal search, and that evidence obtained by the illegal search is not admissible on the trial of this case.

*Theory of the state.* The theory of the state is that the property to be searched was sufficiently described within the meaning of section 23 of the Constitution of the state of Mississippi, but if the court should find upon an examination of this record that the description was insufficient, then we contend that the evidence obtained by means of the search was nevertheless admissible.

In the case of *United States* v. *Bauer et al.,* the search warrant describing the place to be searched as a certain house, store, building or other place known as No. 630 Michigan Avenue, Buffalo, New York, being the premises of a person unknown, was held to be sufficiently specific. See Prohibition Enforcement Bulletin No. 13, June 21, 1923.

The case of *State* v. *Brown,* 114 S. E. 372, holds in substance that, "slight variance in description and date between an affidavit and warrant is immaterial. Failure to read warrant did not vitiate proceedings." This court has held in the case of *Tucker* v. *State,* 90 So. 845; *Williams* v. *State,* 92 So. 584; *Miller* v. *State,* 93 So. 2; *Butler* v. *State,* 93 So. 3; and *Taylor* v. *State,* 93 So. 355, that evidence unlawfully obtained was not admissible on the trial of the case and the same would be suppressed.

This court also held in the case of *Pringle* v. *State,* 108 Miss. 802, that "evidence against one accused of crime

is not admissible because it has been wrongfully obtained.'' And we contend as a matter of fact that great weight of authority elsewhere is to the effect that evidence unlawfully obtained is nevertheless admissible on the trial of the case. And in support of this theory, I shall call the attention of the court to some of the authorities so holding: England: *Jordan* v. *Lewis,* 2 Stra. 1122, 14 E. 306; *Legatt* v. *Tollervey,* 14 E. 302, and many other authorities. Canada: *R.* v. *Doyle,* 12 Ont. 350. United States: Alabama, *Chastaing* v. *State,* 83 Ala. 29, 3 So. 304; Arkansas: *Starchman* v. *State,* 62 Ark. 538, 36 So. 940; California: *People* v. *Alden,* 113 Cal. 264; Georgia: *Williams* v. *State,* 29 S. E. 624; Idaho: *State* v. *Bond,* 12 Idaho, 424, 86 Pac. 43; Kansas: 80 Pac. 948; Kentucky: 224 S. W. 860; Maryland: *Lawrence* v. *State,* 103 Md. 17; Massachusetts: *Faunce* v. *Gray,* 21 Pick. 243; Michigan: *Cluett* v. *Rosenthal,* 100 Mich. 193; Minnesota: *State* v. *Hoyle,* 98 Minn. 254, 107 N. W. 1130; Missouri: 198 Pac. 362; Nebraska: *Younger* v. *State,* 80 Neb. 201; New Hampshire: *State* v. *Flynn,* 36 N. H. 64; New Jersey: *State.* v. *Monsert,* 88 N. J. L. 286; North Carolina: *State* v. *Wallace,* 162 N. C. 622; New York: *People* v. *Adams,* 176 N. Y. 351; Oregon: *State* v. *Laundy,* 204 Pac. 958; South Carolina: *State* v. *Quinn,* 111 S. C. 174; South Dakota: *State* v. *Madison,* 23 S. D. 584; Tennessee: *Horton* v. *State,* 120 Tenn. 61; Texas: *Rippey* v. *State,* 219 S. E. 463; Utah: *Salt Lake City* v. *Wight,* 205 Pac. 900; Vermont: *State* v. *Mather,* 64 Vt. 101; Washington: *State* v. *Royce,* 38 Wash. 111; West Virginia: *State* v. *Douglas,* 20 W. Va., 770, etc.

This is not intended as a complete list of the authorities in all of the states, and as a matter of fact the authorities above cited are culled from the notes of a brief of John H. Wigmore, author of ''Wigmore on Evidence,'' Dean of Law School, Northwestern University, in an article on the use of evidence obtained by illegal search and seizure which is to be found in the August,

1922, issue of American Bar Journal, pages 479 to 484, inclusive. Quoting from this article you will find the following: "It has long been established that the admissibility of evidence is not affected by the illegality of the means through which the party has been enabled to obtain the evidence."

Wigmore's criticisms on the Mississippi rule as laid down in the Tucker case, and others, is found in a footnote on page 481, American Bar Association Journal, August, 1922, and is in part as follows: " 'The courts will not stop to inquire into (sic?) whether evidence offered was illegally obtained,' and falling back on the sentiment, 'It is better that the guilty escape punishment in some instances than that these securities of liberty be violated;' has it occurred to these courts that there is in reality no such dilemma?"

And his criticism of other authorities shown on page 482 of said Journal is in this language: "All this is misguided sentimentality. For the sake of indirectly and contingently protecting the Fourth Amendment, a court appears indifferent to what is the direct and immediate result, viz., of making justice inefficient, and of coddling the criminal classes of the population. It puts supreme courts in the position of assisting to undermine the foundations of the very institutions they are set there to protect. It regards the over-zealous officer of the law as a greater danger to the community than the unpunished murderer, or embezzler, or panderer."

As a conclusion of this able article by Wigmore, he makes use of an illustration, the logic of which seems to me unanswerable, which is as follows: "Titus, you have been found guilty of conducting a lottery; Flavius, you have confessedly violated the Constitution. Titus ought to suffer imprisonment for crime, and Flavius for contempt. But no! We shall let you both go free. We shall not punish Favius directly, but shall do so by

reversing Titus' conviction. This is our way of teaching people like Titus to behave, and incidentally of securing respect for the Constitution. Our way of upholding the Constitution is not to strike at the man who breaks it, but to let off somebody else who broke something else.

"Some day, no doubt, we shall emerge from this quaint method of enforcing the law. At present, we see it in many quarters. It will be abandoned only as the judiciary rises into a more appropriate conception of its powers, and a less mechanical idea of justice."

We have quoted at some length from this able article by Wigmore, which is cited merely as persuasive authority on this subject. We commend the entire article and authorities therein cited to the consideration of this honorable court, and it is not in the hope that any weight or dignity can be added to what has already been written by the great Wigmore on this subject that I add to it my humble opinion on this subject that this honorable court was in error in establishing the rule as laid down in the Tucker case and other cases following same, and if I were now controlled alone by the great respect I have for this honorable court I would disregard my honest convictions in the matter and not ask that these cases be overruled.

I am fully cognizant of the fact that the weight of authority in Mississippi is opposed to my view of the case. Most of these authorities from the Tucker case down to the present time, have heretofore been cited by me; and I again address myself to the task of seeking to overthrow the rule as laid down in the Tucker case, and other subsequent cases since then approving the rule as laid down in the Tucker case; and this I propose to do by a process of reasoning.

The proposition laid down in the case of *Tucker* v. *State,* 90 So. 845, may be briefly stated in substance as follows: Evidence unlawfully obtained is inadmissible

on the trial of a case. The reason for the suppression of evidence by the court, or for its rejection by the jury, if admitted in evidence by the court in the case of a confession of guilt wrung from the unwilling lips of the defendant by unlawful means, by threats, coercion, duress or any other method, is, that such evidence is unworthy of belief, and is as a matter of fact untrue. It is not suppressed by the court or rejected by the jury because it was unlawfully obtained, but is suppressed by the court or rejected by the jury because the confession so obtained is presumably untrue and was made by the defendant in order that he might escape from the threatened violence at the hands of his captors. There is only one exception to this rule for the suppression or rejection of evidence and that is found in section 5 of the federal Constitution, and in section 26 of the Constitution of the state of Mississippi. Article 5 of the Federal Constitution is as follows: "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall he be compelled, in any criminal case, to be a witness against himself; nor be deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use, without just compensation."

Section 26 of the Constitution of the state of Mississippi is as follows: "In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, to demand the nature and cause of the accusation, to be confronted by the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in all prosecutions by indictment or information, a speedy and public trial by an impartial

jury of the county where the offense was committed; and he shall not be compelled to give evidence against himself; but in prosecutions for rape, adultery, fornication, sodomy or the crime against nature the court may, in its discretion exclude from the court-room all persons except such as are necessary in the conduct of the trial."

It will be observed first, in the federal Constitution, article 5, that it says: "Nor shall be compelled in any criminal case to be a witness against himself." And in the Constitution of the state of Mississippi, "And he shall not be compelled to give evidence against himself."

A careful reading of these two sections of the federal and state Constitutions will disclose beyond doubt that which was contemplated in each instance was that upon the trial of a case the defendant could not be compelled to take the witness stand and testify against himself. That is all that was ever contemplated; that was all that was ever intended. It is the only construction that can properly be placed upon the language contained in the two sections. This I say with all due respect to this or any other court that has heretofore or shall hereafter construe either of said sections to mean anything else or to extend the meaning of these sections to cover any other sort of a case.

It is perfectly manifest that when one's premises have been searched and intoxicating liquor has been found thereon, or a still in operation thereon, or the integral parts of a still for the manufacture of intoxicating liquor, that such article or articles thus discovered cannot be suppressed or rejected as evidence to prove the guilt of the defendant on a trial for the unlawful possession of the aforesaid article or articles for the original reason assigned, for the suppression or rejection of evidence, to-wit: that it is untrue and unworthy of belief as in the case of a confession unlawfully obtained or as in the case of a confession as proof of the *corpus delicti.* Therefore it must be suppressed or rejected for the reason assigned

in the case of *Tucker* v. *State, supra,* as shown by the language of the court at page 847, as follows: "When his home speaks, he speaks—they speak the same voice." etc.

In this case this court said that the federal Constitution was not involved and this construction was placed upon section 26 of the state Constitution, and we now propose to show that this was an erroneous construction and therefore an erroneous conclusion arrived at by this court, for the following reasons:

While it was said in the Tucker case that the federal Constitution was not involved, yet for the purpose of understanding what was meant by the word "compelled" as used in the section 26 of the state Constitution, it is proper to refer to article 5 of the federal Constitution and note that it says: "Nor shall he be compelled in any criminal case to be a witness against himself." And in section 26 of the state Constitution the language is: "And he shall not be compelled to give evidence against himself."

If these provisions of the federal and state Constitutions could be construed to mean anything other than that a man shall not be compelled to go on the witness stand and testify against himself, then I insist it means that you could not legally procure evidence against him even with a search warrant, and use it on the trial of the case. Such a construction of these constitutional provisions means that there could be no evidence legally obtained by a search warrant because you would have to construe the Constitution to say that no law shall be passed to compel a man to be a witness against himself or to give evidence against himself; hence any law that is passed would be unconstitutional. Therefore, there is no such thing as evidence legally obtained by means of a search warrant according to the construction placed upon the constitutional provisions by this court in the Tucker case, because this court has said in the Tucker

case, "That there is no difference in forcing a defendant to speak against himself by word of mouth, and in forcing, by an unlawful search, the secret things of his home to give evidence against him. When his home speaks, he speaks—they speak the same voice." And in the same breath they have construed these provisions of the constitutions as covering that sort of a case.

Our position is just this, that these provisions of the constitutions have no reference to evidence obtained by a search, either legally or illegally and that if it did, then there could be no legal search because it would be unconstitutional; and our position further is that no distinction could be properly drawn as to the respective qualities of evidence obtained by a search, either legally or illegally.

What is the difference in legally compelling a man to be a witness against himself, or to give evidence against himself and illegally compelling him to be a witness against himself, or to give evidence against himself? In either case the quality of the evidence is unaffected. If evidence obtained by a search of the premises is compelling him to be a witness against himself or give evidence against himself, then he cannot be legally compelled to do so, because the constitution says he shall not be compelled to do it, and any law which did compel him to do so would be unconstitutional. Therefore all evidence obtained is illegal under the construction placed upon these provisions of the Constitution by this court in the Tucker case.

Wigmore in his criticism of this and other authorities which have placed similar construction on these constitutional provisions, said: "All this is misguided sentimentality . . . It regards the over-zealous officer of the law as a greater danger to the community than the unpunished murderer, or embezzler, or panderer."

It is with great respect for this honorable court that we now presume to suggest that this court was uncon-

sciously influenced by its reverence for the Constitution
and that the conclusion reached in the Tucker case and
the construction placed upon these constitutional provi-
sions was the result of this reverence for the Constitution
designated as "sentiment" by Mr. Wigmore. And, as a
matter of fact, the conclusion reached by this court and
the construction placed upon the constitutional provi-
sions is not justified by reason. As going to show that
this is true, this court in the very recent case of *Hamp-
ton* v. *State*, 96 So. 165, held that evidence unlawfully ob-
tained by means of a search and without a search war-
rant by private persons, was admissible as evidence on
the trial of a case.

Now we submit that the court was absolutely correct
in the Hampton case, but we likewise submit to this court
that the evidence obtained on that occasion by means of
this search was unlawfully obtained whether they were
private persons or officers of the law making the search.
This shows conclusively that this court in the last analy-
sis does not mean to say, and does not propose to hold,
that evidence unlawfully obtained by means of a search
is inadmissible as evidence on the trial of the case, and
it is likewise perfectly plain that this court was con-
trolled in part by a reverence for the Constitution and in
part by a fear of the consequences of the acts of over-
zealous officers who, if left unrestrained, would walk
rough shod over the citizenship of the grand old state
of Mississippi; but we submit that these should not
have been the controlling factors. We hold no brief
for the over-zealous officer who would search a man's
house without a search warrant, nor for the private in-
dividual who would make a search of one's home or
premises without a search warrant. In either case they
are trespassers and there is a remedy. Section 1132,
Hemingway's Code, same being section 1389, Code of
1906, is as follows: "Any person who shall be guilty of
a wilful or malicious trespass upon the real or personal

property of another, for which no other penalty is prescribed, shall, upon conviction, be fined not exceeding five hundred dollars, or imprisoned not longer than six months in the county jail, or both.''

And it was held in *Knight, Jr.* v. *State,* 2 So. 252, ''That a disturbance of possession was the gist of the offence; that the title to the property was not involved, neither was the rightfulness of possession, nor was the *bona-fide* belief on the part of the man making the trespass that he had a right to enter upon the premises a defense.''

An unlawful search cannot be made without committing a trespass and a trespasser cannot escape the penalty imposed by this statute. But this court has overlooked these things. Another reason as indicating that this court was prompted by reverence for the Constitution rather than controlled by logic and reason, is, as in the present case; this defendant brazenly admits that with one fell swoop he smashed to smithereens the Eighteenth Amendment to the federal Constitution when he had in his possession and was actually operating a still, manufacturing whisky, yet in his next breath he is demanding a strict observance of his Constitutional rights under some other section. He has shown his utter contempt for the Constitution, by his wilful disregard of the Eighteenth Amendment. But this court is in the attitude of saying, that the greater danger to society comes as a result of the technical violation of section 23 of the Constitution by a sworn officer of the law, than from a wilful violation of the Eighteenth Amendment to the federal Constitution by a criminal.

Argued orally by *S. C. Broom,* Special Assistant Attorney-General, for the state.

ANDERSON, J., delivered the opinion of the court.

Appellant, Ned Owens, was indicted and convicted in the circuit court of Lamar county of possessing a still,

and sentenced to one year in the penitentiary, from which judgment he prosecutes this appeal.

There was a search for and seizure of the still in this case, and made by an officer without a search warrant. He had a search warrant authorizing the search of the premises of Lonny Williams. Instead, however, of searching the premises of Lonny Williams, the officer searched the premises of appellant, Ned Owens, and found the still in question. The search warrant authorizing the search of the premises of Lonny Williams was no authority whatever for searching the premises of appellant. We have a case simply where the search and seizure was without a search warrant, and the only evidence of guilt was obtained as the result of such unlawful search and seizure, and therefore, if *Tucker* v. *State,* 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377, and cases following that case are to stand, the trial court should have granted appellant's request for a directed verdict. The state, however, assails the soundness of that case, and urges the court to overrule it. It was held in that case, following the supreme court of the United States and the courts of several, although a minority, of the states, that evidence secured by the state against a defendant charged with crime in violation of the search and seizure section of our Contsitution could not be used against him, because to do so would violate, not only said section of the Constitution (section 23), but that clause of section 26 securing defendants charged with crime against self-incrimination.

The judge who wrote the opinion in the Tucker case may not have been justified in some of the reasons given for the holding of the court. Whether that be true or not, it was the purpose of the court in that case, and it was so explicitly stated in the opinion, to follow the decisions of the supreme court of the United States involving the same question, for the reasons given by that court.

After a most thorough reconsideration of the Tucker case, we decline to overrule it. We believe the rule laid

down by the supreme court of the United States and followed in the Tucker case to be the wiser and better rule, although it is the rule of a minority of the courts of this country.   The question was first before the supreme court of the United States in *Boyd* v. *U. S.*, 116 U. S. 619, 6 Sup. Ct. 524, 29 L. Ed. 747, decided in 1886.   It was decided by a unanimous court.   Justice BRADLEY's opinion in that case is able and convincing.   Among other things he said the Fourth and Fifth Amendments to the federal Constitution (corresponding to sections 23 and 26 of our Constitution) were indissolubly connected; that each threw light upon the other; that the unreasonable searches and seizures condemned in the Fourth Amendment were generally made for the purpose of compelling persons to give evidence against themselves, which in criminal cases was condemned in the Fifth Amendment; that the seizure of a man's private books and papers, to be used as evidence against him in violation of the Fourth Amendment, was tantamount to compelling him to be a witness against himself in violation of the Fifth Amendment.

This question has in recent years been re-examined by the supreme court, and the principle laid down in the Boyd case reaffirmed in the following cases: *Weeks* v. *U. S.*, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652; L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; *Silverthorne Lbr. Co.* v. *U. S.*, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; *Gouled* v. *U. S.*, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; *Amos* v. *U. S.*, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654.   And the view entertained by the supreme court of the United States has been followed by the states of West Virginia, Kentucky, South Carolina, Iowa, Michigan, Indiana, Washington, and Tennessee in the following cases: *State* v. *Wills*, 91 W. Va. 659, 114 S. E. 261, 24 A. L. R. 1398; *Youman* v. *Com.*, 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303; *Ash* v. *Com.*, 193 Ky. 452, 236 S. W. 1032; *Blacksburg* v. *Beam*, 104 S. C. 146, 88 S. E. 411, L.

R. A. 1916E, 714; *State* v. *Rowley* (Iowa), 187 N. W. 7; *People* v. *Marxhausen,* 204 Mich. 559, 171 N. W. 557, 3 A. L. R. 1505; *People* v. *Foreman,* 218 Mich. 519, 188 N. W. 375; *Callender* v. *State,* (Ind. Sup.), 136 N. E. 10; *State* v. *Gibbons,* 118 Wash. 171, 203 Pac. 530; *Hughes* v. *State,* 145 Tenn. 544, 238 S. W. 588, 20 A. L. R. 639.

We said in the Tucker case that the federal supreme court was our greatest exponent of constitutional law. We add now these further observations, with reference to the greatness and independence of that court: Looking over its entire history, it can be truthfully said that it has been independent of party, power, and popularity. It has withstood for more than a century many storms of popular prejudice, some of which would have destroyed it had an opportunity been presented. The calm judgment of the people, however, has always sustained its decisions. Of its independence, Warren, in his history of the supreme court of the United States, vol. 1, pp. 21-23, said:

"Thus, judges appointed by Jefferson and Madison did not hesitate to join with Marshall in sustaining and developing the strongly nationalistic interpretation of the Constitution so obnoxious to Jefferson. Judges appointed by Jackson joined with Marshall and Story in supporting the Cherokee Missionaries against Georgia, in flat opposition to Jackson. The whole bench, appointed by Jackson, decided against his policy in relation to the Spanish land claims. Judges appointed by Jackson and Van Buren threw down the gauntlet to the former by issuing a mandamus against his favorite Postmaster General. In every case involving slavery, antislavery judges joined with proslavery judges in rendering the decisions. The constitutionality of the obnoxious Fugitive Slave Law was unanimously upheld by antislavery Whig judges and by proslavery Democrats alike. A Northern Democrat joined with a Northern Whig judge in dissenting in the Dred Scott Case. President Lincoln's legal tender

policy was held unconstitutional by his own appointees. The reconstruction policies and acts of the Republican Party were held unconstitutional by a Republican bench. The constitutional views of the Democratic Party as to our insular possessions were opposed by a Democratic judge, who joined with his Republican associates in making up the majority in the Insular Cases. Multiple other illustrations might be cited. In fact, nothing is more striking in the history of the court than the manner in which the hopes of those who expected a judge to follow the political views of the President appointing him have been disappointed. While at various periods of extraordinary partisan passion charges of political motives have been leveled at the court, it has been generally recognized, when the storms subsided, that the accusations were unwarranted. In fact, it is one of the safeguards of our form of government that the people recognize that the refusal by the courts to make concessions to expediency or temporary outcry is required for the protection of the rights of the citizen. 'Considerate men of every description ought to prize whatever will tend to beget or fortify that temper in the courts,' said Alexander Hamilton, 'as no man can be sure that he may not be tomorrow the victim of a spirit of injustice by which he may profit today.' "

The supreme court of the United States held that the best and most effectual method of forcing the federal government to obey the search and seizure provision of the federal Constitution was to outlaw any and all evidence acquired against a defendant in violation of it. The majority of the state courts hold that the manner of acquiring evidence by the state is not to be inquired into; that the state, through its officials, will be permitted to trample under foot the constitutional guaranty against unreasonable searches and seizures, and use whatever evidence may be thus acquired against a defendant. Which is the better view? It seems to ask the question is

to answer it. How can the state expect its citizens to observe the prohibition amendment to the federal Constitution and the prohibition laws of this state, when the state itself, through its legally constituted officers, is boldly claiming the right to override the search and seizure provision of our Constitution, in order to enforce such prohibition laws. The courts that hold the contrary view simply make it a foot race between the state on the one hand and violators of the prohibition laws on the other, to see who will be the biggest criminal. The state says to the violator of the prohibition laws, "I should have a right to violate the Constitution in order to prevent you from violating the Constitution." There can be no effective enforcement of prohibition by means of the state openly and defiantly violating one of the fundamental rights of the citizen. It seems hopeless for the state to expect its citizens to observe the law when the state itself is a lawbreaker. The state is an outlaw. The citizen is an outlaw. Which is to be condemned most? The only way the state can inspire its citizens to observe the law is to obey the law itself. A lawbreaker cannot successfully enforce the law. It is human nature for man to require those in authority over him to revere and obey the law.

The supreme court of the United States, in order to successfully enforce the searches and seizures provision of the Constitution, declared a rule, which may be a new rule, but what of it. It had the right to do so. One of its main functions is to interpret and construe the federal Constitution, and in doing so it has more than once struck out boldly and declared principles theretofore unknown.

All the courts agree that a confession of guilt, obtained either through force, intimidation, or promise of reward, cannot be used against a defendant in a criminal case, and they also agree that judicial process cannot be had to compel a defendant charged with a crime to produce in court the evidence of the crime. Under this rule the state can-

not, by judicial process, compel a defendant charged with a violation of the prohibition laws to produce into court his liquor or still or other evidence of guilt to be used against him.    24 R. C. L., section 25, p. 719; *State* v. *Wills, supra.*    The relation of client and attorney is a privileged one.    The attorney acquiring knowledge of the guilt of his client of crime, where such knowledge is acquired by virtue of such relationship, will not be permitted to divulge such knowledge over the objection of the client.    The same is true of the relation between physician and patient.    The state proceeds on the theory that the public good will be better subserved by keeping such relationships sacred, even though it may result in the guilty going unpunished.    When the state invades the home and possessions of its citizen in violation of the search and seizure provision of the Constitution, what it learns as to the guilt of the citizen of crime ought to be privileged.    The state's mouth ought to be closed forever. It cannot be said with truth that only the guilty complain at a violation by the state of the guaranty to its citizens against unreasonable searches and seizures.    The homes and possessions of the innocent have been searched without a search warrant.    That is a matter of state history. It is hard to conceive of an experience more humiliating than that.    And furthermore, the wives and children of even the guilty should be considered.    The state, before it brings shame and humiliation upon them, should proceed according to the Constitution.    And even the guilty are entitled to the protection of the Constitution and laws of the country.    Where is the person who has reached the age of maturity who has committed no crime? ·

It is argued that the *Pringle Case* (108 Miss. 802, 67 So. 455) and the Tucker case are in conflict.    There are two most important differences in the two cases.    In the Pringle case the incriminating evidence was taken from the defendant's person while he was under arrest and in jail; and furthermore the court, in its opinion, states: "It does

not appear that appellant objected to the search of his clothing.'' The defendant was not under arrest in the Tucker case and did not consent to the search. We have held that a search and seizure could be legalized by consent; and the courts generally hold that an officer lawfully arresting a person may search his person without further warrant, for the purpose of disarming and obtaining evidence of his guilt. There is no invasion of his person in so doing. The warrant of arrest gives the authority.

It follows from these views that the trial court should have granted appellant's requests for a directed verdict.

*Reversed and remanded.*

SYKES, J. (specially concurring).

In this case, and others pending before the court in Banc, we are asked to overrule the case of *Tucker* v. *State,* 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377. I agree in the main with the reasoning in the Tucker case and with the authorities therein cited decided by the supreme court of the United States.

The decisions of the supreme court of the United States relied on in the Tucker case are *Boyd* v. *U. S.,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; *Weeks* v. *U. S.,* 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; *Lumber Co.* v. *U. S.,* 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; *Gouled* v. *U. S.,* 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; and *Amos* v. *U. S.,* 255 U. S., 313; 41 Sup. Ct. 266, 65 L. Ed. 654. The material questions decided in these cases are that the state or federal officers have no right without a search warrant, under the Fourth and Fifth Amendments of the Constitution of the United States, to search the house or office of one, and to seize any property found therein; that any property found therein as a result of this unlawful search and seizure must be returned to the owner upon proper application therefor; that neither this property nor any

testimony relating to the finding of it, because of the un-
lawful search, is admissible as evidence against the de-
fendant in a criminal action or in a suit against him,
based upon a penal statute. I think these cases are prop-
erly decided, and the reasons therein stated are to my
mind unanswerable. These reasons are set forth in the
Tucker case and in the opinion of Judge ANDERSON in
this case.

I do not think that the views announced in the Tucker
case are in conflict with the opinion of this court in the
Pringle case, reported in 108 Miss. 802, 67 So. 455. In
the Pringle case, Pringle was under arrest when the
papers were taken from his person. I think the distinc-
tion between the Pringle and Tucker cases and the case
at bar is very well illustrated by the following quota-
tion from the *Weeks case, supra*:

"It is not an assertion of the right on the part of the
government, always recognized under English and Amer-
ican law, to search the person of the accused when leg-
ally arrested, to discover and seize the fruits or evidences
of crime. This right has been uniformly maintained in
many cases"—citing authorities.

In all of these cases from the supreme court of the
United States the officers seized property of the defend-
ant. All of them except one were letters, papers, or docu-
ments of some kind. In the Amos case there was some
liquor seized. Under the federal statutes liquor is still
property.

While the law announced in the Tucker case in my
opinion is correct, it was incorrectly applied to the state
of facts. In that case and those following it the atten-
tion of the court was not addressed to the face that there
is no such thing in this state as property in liquor. It
is contraband, and under our statutes it is the duty of
the officers to destroy it wherever found. It is a crime
to have in one's possession in this state liquor. It is
also a crime to have in one's possession a still. A still

must likewise be destroyed where found. Neither is it property any more in this state. Since neither liquor nor a still is property in Mississippi, and it is made the duty of the officer to destroy either one or both when found, then under our laws, though however wrongfully they may have been seized, they must never be returned to the unlawful owner who, by owning one or both, was thereby committing a crime. They are not subjects of ownership but subjects of crime. The court in the Tucker case, in my judgment, overlooked a very material fact—that, though an officer has no right to enter a house without a search warrant, and though such conduct is reprehensible on his part and must in no wise be condoned by this court, yet under our laws it is the duty of an officer to arrest one who commits a crime in his presence; that the possession of liquor or of a still is a crime, and that the minute an officer sees either liquor or a still he sees a crime being committed in his presence. He then must arrest the criminal. The fact that the officer has violated the Constitution and is himself amenable to both civil and criminal prosecutions therefor, in my judgment, should not close his mouth nor prevent him from testifying to a crime which was committed in his presence. When he sees the still or the liquor, he sees a crime being committed. This, in my opinion, is a very material difference between these cases and those decided by the supreme court of the United States. In none of those cases was the possession or did the mere possession of the property constitute a crime. In these cases it does. The fact that an officer of the law is himself a law violator should not take from him the right to arrest one who commits a misdemeanor or felony in his presence, and should not prevent the state from having the benefit of his testimony about this crime committed in his presence. I do not understand that any of the above cases from the supreme court of the United States are decisive of this question. In my judg-

ment, from a careful consideration of them, I believe that that court, when presented with the precise question here presented, will permit the officer to testify and permit the introduction of the liquor or still which constitutes the *corpus delicti.*

For these reasons I believe that the Tucker case was wrongly decided, that the law in that case was not correctly applied to the facts, and that for this reason it should be overruled.

Since a majority of the judges do not concur with me in this view, we are unable to overrule the Tucker case, and I conceive it my duty to follow it.

Judge Cook concurs with me in the views herein expressed.

SMITH, C. J. (Dissenting).

The evidence which the appellant sought to exclude in the court below is that two "acting" deputy sheriffs and a town marshal searched his home under a warrant which did not authorize a search thereof, and discovered therein and seized a still and about a half barrel of mash. The ground on which it is sought to exclude this evidence is that its admission would violate sections 23 and 26 of the state's Constitution. Section 23 of this Constitution provides that:

"The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized."

The question here presented under this section of the Constitution is simply this: Is evidence, otherwise competent, rendered inadmissible because it was unlawfully obtained? or, to be more specific, Is evidence obtained by a public officer by means of an unlawful search and seizure admissible, when offered by the state on the trial of the person whose property was unlawfully searched and seized?

One of the oldest and most elementary rules of evidence is that the admissibility of evidence is not affected by the illegality of the means by which it was obtained, and, until the decision of *Boyd* v. *U. S.,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, it seems not to have been seriously doubted that evidence obtained by a public officer by means of an unlawful search and seizure was not rendered inadmissible by the manner in which it was obtained. In 1841 evidence obtained by an unlawful search and seizure was held admissible by the supreme judicial court of Massachusetts. *Commonwealth* v. *Dana,* 2 Metc. 329, and the decisions thereafter to the same effect, including one by this court (*Pringle* v. *State,* 108 Miss. 802, 67 So. 455), are too numerous to be here set forth. Most of these decisions will be found in the notes to 4 Wigmore (2d Ed.), section 2183; in an article by the same author in the American Bar Association Journal of August, 1922; the notes to *State* v. *Turner,* 136 Am. St. Rep. 135; to *State* v. *Marxhausen,* 3 A. L. R. 1514; and to *State* v. *Wills,* 24 A. L. R. 1508.

The right of the citizen to be secure from unlawful searches and seizures was not created by this section of the Constitution, for that right was recognized and enforced at common law. *Money* v. *Leach,* 3 Burrows, 1742; *Entick* v. *Carrington,* 19 How. St. Tr. 103. The origin and purpose of the prohibition against unreasonable search and seizure, contained in the various state Constitutions, is the same as the origin and purpose of the prohibition thereof contained in the Fourth Amendment to the federal Constitution.

"The origin of this amendment runs back in English history to the seventeenth century, when Charles II was placed on the throne. It had become the practice in the office of the secretaries to the Crown, after the Restoration, to issue warrants for the arrest of persons without inserting their names in the warrants, especially

authors, printers, and publishers of obscene, and seditious libels, and to invade the homes and search for private papers of individuals to obtain evidence against them on imaginary charges. This practice continued until the latter part of the eighteenth century, when the validity of such warrants was contested, and it was held by the Court of King's Bench in *Money* v. *Leach,* 3 Burrows, 1742, that the warrant must be issued upon the oath of an accuser, setting forth the name of the offender, the time, place, and nature of the offense with a reasonable degree of certainty.

"While officers of the Crown were issuing and serving such warrants in England, they were doing the same in the American Colonies, and this contributed much to that public sentiment which eventually demanded the adoption of this amendment." 2 Watson on the Constitution, pp. 1414, 1415.

See, also Cooley's Constitutional Limitations (7 Ed.), p. 426.

When this amendment was adopted, it had long been the rule at common law that evidence obtained by an unlawful search and seizure was admissible on the trial of the person whose right of privacy had been invaded by the search and seizure. This was expressly decided on the Bishop of Atterbury's trial in 1723. 16 How. St. Tr. pp. 490 to 498, inclusive, and is still the rule in England. At common law immunity from unreasonable search and seizure was enforced, not by excluding the evidence obtained thereby, but by subjecting the official who violated the right to a criminal prosecution or to a suit for damages. Had the immunity from unreasonable search and seizure not been included in the Constitution, the common-law immunity of the citizens therefrom would still have remained in force, in which event it could not have been said, in view of the English decisions, that evidence obtained by an unlawful search

or seizure is inadmissible. How then can it be said that the mere inclusion of the common-law immunity in the Constitution changed the common-law rules of evidence pertaining thereto?

In *Pringle* v. *State,* 108 Miss. 806, 67 So. 455, a letter written by Pringle, and which had been obtained by a constable by means of a search, which the court held to be unlawful, was admitted in evidence over Pringle's objection in a case wherein he was charged with the crime of murder. The assignment of error, which the court in its opinion states that Pringle's counsel mainly relied upon was the one complaining of the admission of this evidence. In deciding that question the court said:

"The leading case, *State* v. *Turner,* reported in 82 Kan. 787, 109 Pac. 654, 32 L. R. A. (N. S. ) 772, 136 Am. St. Rep. 129, and the notes thereto, go fully into a discussion of the principles involved in this assignment of error. Briefly stated, the rule is: Evidence against one accused of crime is not inadmissible because it has been wrongly obtained.

"It may have been wrong for the constable to have searched the prisoner; his conduct may have been reprehensible; but this will not affect the admissibility of the letter thus wrongfully obtained."

In the notes to the case to which the court referred (136 Am. St. Rep. 153), it is said: "That no rule of evidence is more firmly established than that which declares evidence to be admissible, if pertinent to the issue, although obtained by an unreasonable, or an unwarranted, or an unlawful, search and seizure."

In stating the case in *Pringle* v. *State, supra,* the court said: "It does not appear that appellant objected to the search of his clothing, but in our opinion it is immaterial whether he objected or not."

It is clear from this that the court did not mean to decide that case on the theory that Pringle had consented

to the search and seizure there in question. This case was not called to the attention of Division A of this court, and was overlooked by it when the case of *Tucker* v. *State,* 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377, was decided.

It is uniformly held by this court and all others, in so far as I am aware, that evidence obtained by a private individual by means of an unlawful search and seizure is not inadmissible because of the manner in which it was obtained, and I am unable to see why the rule should be different where an unlawful search and seizure was made by a public officer, for, when he exceeds his authority and commits a trespass, a public officer is on the same plane, in so far as the law is concerned, that a private citizen is.

In *Williams* v. *State,* 100 Ga. 511, 28 S. E. 624, 39 L. R. A. 269, it was very accurately stated that:

"The main, if not the sole, purpose of our constitutional inhibitions against unreasonable searches and seizures was to place a salutary restriction upon the powers of government; that is to say, we believe the framers of the Constitution of the United States and of this and other states merely sought to provide against any attempt, by legislation or otherwise, to authorize, justify, or declare lawful any unreasonable search or seizure. This wise restriction was intended to operate upon legislative bodies, so as to render ineffectual any effort to legalize by statute what the people expressly stipulated could in no event be made lawful; upon executives, so that no law violative of this constitutional inhibition should ever be enforced; and upon the judiciary, so as to render it the duty of the courts to denounce as unlawful every unreasonable search and seizure, whether confessedly without any color of authority, or sought to be justified under the guise of legislative sanction. For the misconduct of private persons, acting upon their individual responsibility and of their own volition,

surely none of the three divisions of government is responsible. If an official, or a mere petty agent of the state, exceeds or abuses the authority with which he is clothed, he is to be deemed as acting, not for the state, but for himself only; and therefore he alone, and not the state, should be held accountable for his acts. If the constitutional rights of a citizen are invaded by a mere individual, the most that any branch of government can do is to afford the citizen such redress as is possible, and bring the wrongdoer to account for his unlawful conduct. . . . Whether or not prohibiting the courts from receiving evidence of this character would have any practical and salutary effect in discouraging unreasonable searches and seizures, and thus tend towards the preservation of the citizen's constitutional right to immunity therefrom, is a matter for legislative determination.''

Rules of evidence are not for the purpose of enforcing rights and duties but solely to enable the court to arrive in an orderly manner at the truth in a cause which it has under consideration. An invasion of private right is punished, not by rules of evidence, but by criminal prosecutions and suits for damages. But the competency of the evidence here under consideration may be rested on a narrower ground than the general rule that the manner in which evidence is obtained does not affect its competency.

Section 1, chapter 211, Laws of 1922, provides: ''That it shall be unlawful for any person, persons or corporations to own or control, or knowingly have in his, their or its possession any distillery commonly called a 'still,' or any integral part thereof.''

Section 5, chapter 189, Laws of 1918, provides: ''That no property rights of any kind shall exist . . . in any apparatus or appliance . . . which may be used for the purpose of distilling or manufacturing any in-

toxicating liquors, and in all such cases, . . . the said property herein named, except vehicles, conveyances or boats, may be seized by the sheriff or any other lawful officer of the state, and destroyed and rendered useless by him without any formal order of any court, and may be searched for and seized under the laws of this state.''

Section 1447, Code of 1906 (Hemingway's Code, section 1204), provides:

''An officer or private person may arrest any person without warrant, for an indictable offense committed . . . in his presence.''

In so far as section 5, chapter 189, Laws of 1918, attempts to confer upon a sheriff or any other lawful officer, the right to search for appliances used in the manufacture of liquor without a warrant therefor, when a warrant is required by section 23 of the Constitution, it is void, but the mere possession by the appellant of the still here seized by the sheriff was unlawful, and a crime was therefore being committed by him in the sheriff's presence, when the still was discovered by the sheriff, and consequently it became his duty then and there to seize the still and to arrest the appellant. And he was not relieved of the duty so to do, imposed on him by the statute; because of the fact that the commission of the crime came under his observation while he was making an unlawful search of the appellant's premises. He may be subject to whatever punishment the law may impose for the trespass committed by him in making the search, but the seizure by him of the still was nevertheless lawful (*Monette* v. *Toney,* 119 Miss. 846, 81 So. 593 (5 A. L. R. 261) from which it necessarily follows that the evidence on which the seizure was made is competent (*State* v. *Pauley* [N. D.], 192 N. W. 91, *State* v. *Krinski,* 78 Vt. 162, 62 Atl. 37). Had he failed to make the seizure, he would have been subject to whatever punishment the law inflicts upon the sheriff for failing to discharge his statutory duties.

In none of the cases decided by the supreme court of the United States, and here relied on by the appellants and by this court in *Tucker* v. *State,* 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377, was the mere possession of the article seized a crime because of which it was the duty of the officer, under whose observation it came, not only to seize it, but to arrest the person in whose possession it was found. What that court will decide when the narrow question here under consideration is presented to it remains to be seen, but the rule as I have stated it seems to have been foreshadowed by it in *Boyd* v. *U. S.,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, wherein it was said:

"The search for and seizure of stolen or forfeited goods, or goods liable to duties and concealed to avoid the payment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained or of using them as evidence against him. The two things differ *toto coelo.* In the one case, the government is entitled to the possession of the property; in the other, it is not. The seizure of stolen goods is authorized by the common law; and the seizure of goods forfeited for a breach of the revenue laws, or concealed to avoid the duties payable on them, has been authorized by English statutes for at least two centuries past; and the like seizures have been authorized by our own Revenue Acts from the commencement of the government. The first statute passed by Congress to regulate the collection of duties (the Act of July 31, 1789, 1 Stat. 29, 43), contains provisions to this effect. As this act was passed by the same Congress which proposed for adoption the original Amendments to the Constitution, it is clear that the members of that body did not regard searches and seizures of this kind as 'unreasonable,' and they are not embraced within the prohibition of the

Amendment. So, also, the supervision authorized to be exercised by officers of the revenue over the manufacture or custody of excisable articles, and the entries thereof in books required by law to be kept for their inspection are necessarily excepted out of the category of unreasonable searches and seizures. So, also, the laws which provide for the search and seizure of articles and things, which it is unlawful for a person to have in his possession for the purpose of issue or disposition, such as counterfeit coin, lottery tickets, implements of gambling, etc., are not within this category."

In support of this statement of the law the court cited *Commonwealth* v. *Dana,* 2 Metc. 329, wherein, as hereinbefore stated, the supreme judicial court of Massachusetts decided that evidence was not rendered inadmissible because it was obtained by means of an unlawful search and seizure.

This brings me to appellant's contention that the admission of the evidence here in question would violate section 26 of the state's Constitution, which provides that:

"In all criminal prosecutions the accused . . . shall not be compelled to give evidence against himself."

Evidence can be given only by words and acts, so that the prohibition is that a person shall not be compelled to say or do something that would tend to incriminate him. The compulsion must be strictly testimonial; that is, must be directed to a person in the capacity of a witness. In 4 Wigmore on Evidence (2d Ed.), section, it is said that:

"Documents or chattels obtained from the person's control without the use of process against him as a witness are not in the scope of the privilege and may be used evidentially; for obviously the proof of their identity, or authenticity, or other circumstances affecting them, may and must be made by the testimony of other

persons, without any employment of the accused's oath or testimonial responsibility.''

See 4 Wigmore on Evidence (2d Ed.), section 2263; 5 Jones on Evidence, section 884; note to *State* v. *Turner*, 136 Am. St. Rep., at page 147.

From this it follows that a person cannot be compelled to himself produce in court incriminating documents and chattels to be used as evidence against him, but the protection extends no further.

A complete answer to the argument advanced in some of the cases for the exclusion of chattels and documents unlawfully seized, when offered in evidence against the person from whom they were taken, that, when a person's property speaks, he himself speaks, and therefore to introduce in evidence his property or facts relative thereto, obtained by means of its unlawful seizure, is tantamount to compelling him to testify in person, is contained in the opinion of the supreme court of New Hampshire in *State* v. *Flynn*, 36 N. H. 64 wherein it was said:

"The objection made in this case does not go so far as to insist that all evidence obtained under a search warrant is incompetent. Its ground is, rather, that, information obtained by means of a search warrant, in a case not authorized by the Constitution, is not competent to be given in evidence, because it has been obtained by compulsion from the defendant himself, in violation of that clause of the Constitution which provides that no person shall be compelled to furnish evidence against himself. . . .

"It seems to us an unfounded idea that the discoveries made by the officers and their assistants, in the execution of process, whether legal or illegal, or where they intrude upon a man's privacy without any legal warrant, are of the nature of admissions made under duress, or that it is evidence furnished by the party himself upon

compulsion.   The information thus acquired is not the admission of the party, nor evidence given by him, in any sense.   The party has in his power certain mute witnesses, as they may be called, which he endeavors to keep out of sight, so that they may not disclose the facts which he is desirous to conceal.   By force or fraud access is gained to them, and they are examined, to see what evidence they bear.   That evidence is theirs, not their owners.   If a party should have the power to keep out of sight, or out of reach, persons who can give evidence of facts he desires to suppress, and he attempts to do that, but is defeated by force or cunning, the testimony given by such witness is not his testimony, nor evidence which he has been compelled to furnish against himself.   It is their own.   It does not seem to us possible to establish a sound distinction between that case, and the case of the counterfeit bills, the forger's implements, the false keys, or the like, which have been obtained by similar means.   The evidence is in no sense-his.''

The same conclusion was reached by this court in *Magee* v. *State,* 92 Miss. 865, 46 So. 529.   In order to determine whether Magee was the person who committed the crime with which he was charged, he was compelled to place his bare foot in a track made by the bare foot of the perpetrator of the crime and testimony to the effect that his foot fitted the track was held to be competent when offered on Magee's trial, the court stating:

''There has been great confusion in some courts on this subject; but we do not see how it is possible, logically, to sustain an objection to compelling the defendant simply to put his foot in a track for the purpose of identification, on the ground that he was privileged, by the constitutional provisions referred to, against being compelled to testify or to give evidence against himself. He is not, in such cases, giving evidence.   He is not testifying as a witness.   He is not delivering any testimonial utterance.''

This case was not called to the attention of Division A of this court when it decided the Tucker case.

Evidence obtained by means of a lawful search warrant is admissible under all of the authorities, including the courts which hold that evidence obtained by an unlawful search is inadmissible, though the reason for the exclusion of such evidence under section 26 of the Constitution, when obtained by an unlawful search, applies with equal force to evidence obtained by a lawful search. In each case the evidence is obtained without the consent of the person whose premises were searched, and, if in the one case he speaks when his property speaks, he must so speak also in the other. The distinction is arbitrary and is without foundation in either the Constitution or the common law, and, if the evidence does not violate the rule against self-incrimination in one case, it does not in the other.

The foregoing views are fully supported by the following cases, decided since the supreme court of the United States decided the Amos and Gouled cases relied on and followed in the Tucker case: *State* v. *Chuchola* (Del. Gen. Sess.), 120 Atl. 212; *Commonwealth* v. *Wilkins,* 243 Mass. 356, 138 N. E. 11; *State* v. *Simmons,* 183 N. C. 684, 110 S. E. 591; *Sioux Falls* v. *Walser,* 45 S. D. 417, 187 N. W. 821; *State* v. *Hesse* (Minn.), 191 N. W. 267; *Venable* v. *State,* 156 Ark. 564, 246 S. W. 860; *State* v. *Myers,* 36 Idaho, 396, 211 Pac. 440; *People* v. *Mayen,* 188 Cal. 237, 205 Pac. 435, 24 A. L. R. 1383; *Banks* v. *State,* 207 Ala. 179, 93 South. 293, 24 A. L. R. 1359; *Kennemer* v. *State,* 154 Ga. 139, 113 S. E. 551.

The case of *Tucker* v. *State,* 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377, was erroneously decided, is in conflict with *Pringle* v. *State,* 108 Miss. 802, 67 So. 455, and *Magee* v. *State,* 92 Miss. 865, 46 So. 529, is mischievous in its results, and should be overruled. Until it is overruled, however, it is binding on this court and the trial courts.

While three of the judges participating in the decision of the case at bar are of the opinion that the Tucker case should be overruled, nevertheless that cannot be here done, for the reason that a former decision of this court can be overruled only by a decision concurred in by a majority of the judges participating therein. I yield, therefore to the authority of· the Tucker case, but will assist in overruling it whenever the opportunity offers.