### TUCKER v. STATE.

· [90 South. 845, No. 22335.]

1. CRIMINAL LAW.  *Searches and seizures. Federal constitutional pro-
   visions as to unreasonable search and self-incrimination not ap-
   plicable to state agencies.*
   The Fourth and Fifth Amendments of the federal Constitution, guar-
   anteeing the people against unreasonable search and seizure, and
   self-incrimination, are directe · ·; the exercise of federal authority;
   and not at the states and the agencies.

2. CRIMINAL LAW.  *Testimony based on knowledge acquired in search-
   ing premises without search warrant, in violation of· Constitution,
   held inadmissible.*
   Where a defendant, charged with the unlawful making of intoxicating
   liquors, was convicted alone on the evidence of the officers making
   a search of his home and premises without a search·warrant, whose
   testimony was based alone on knowledge acquired by what they saw
   in his home and· premises in making such search, such evidence
   should have been excluded and the defendant acquitted, because such
   conviction violated section 23 of the Constitution of 1890 of this
   state, guaranteeing the people against unreasonable searches and
   seizures, and that clause of section 26 of said Constitution securing
   a defendant in a criminal case against self-incrimination.

APPEAL from circuit court of Lincoln county.

HON. D. M MILLER, Judge.

Tom Tucker ·as convicted of the unlawful making of
intoxicating ·quor, and he appeals.  Reversed, and de-
fendant discharged.

*Jas. A. Noble,* for appellant.

In behalf of appellant I invoke the Fourth Amendment and Fifth Amendment of the Constitution of the United States. In his behalf I invoke sections 23 and 26 of the Mississippi Constitution. In his behalf I invoke our own statute laws. Amendment 4 of the United States Constitution reads as follows: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Section 23 of the Mississippi Constitution reads: "The people shall be secured in their persons, houses, and possessions from unreasonable seizure or search and no warrant shall be issued without probable cause supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized." . . . Thus the court at once sees that our state constitution and national constitution are the same in meaning and almost identical in phraseology. Also there is in the Fifth Amendment to the Federal Constitution this language: " . . . nor shall be compelled in any criminal case to be a witness against himself . . . " In the 26th section of the Mississippi Constitution is this language: " . . . and he shall not be compelled to give evidence against himself . . . " Again the absolute sameness of our state Constitution and our Federal Constitution. I have thus compared these Constitutions, because a little later I will cite several decisions of the supreme court of the United States, as well as several supreme court decisions of the states; and I am doing this partially because it might be said for the state that the Federal Constitution has reference only to Federal officers; but, right here I will say that the Federal and state organic laws are the same; therefore, I feel absolutely sure our supreme court will follow the lead of

the United States supreme court, especially since the two constitutions are the same on this subject.

Just before I now cite my authorities, let me observe that, argument might be made for the state, that since it appears that the two officers in question, found things in the house and smokehouse of defendant that shows him guilty, he should not complain, and should not be acquitted, even though the evidence was obtained unlawfully and unconstitutionally. I will not weary the court with my own argument and my own reasoning, but will let the court hear the argument of the great jurists of various state supreme courts and the supreme court of the United States as expressed in their well-writen and well-reasoned decisions.

I now will give authorities in the following paragraph. *Freemont Weeks* v. *United States,* 232 U. S. 383, 58 L. Ed. 652, 35 Sup. Ct. Rep. 341, L. R. A. 1915B. 834; *Town of Blacksburg* v. *Audie Beam,* 88 S. E. 441, L. R. A. 1916E. 714; *State of Michigan* v. *August Marxhausen,* 171 N. W. 557, 3 A. L. R. 1505; *Roy Youman* v. *Commonwealth of Kentucky,* 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303, 88 So. 377.

I cite the Mississippi cases of *J. Livelar & Co.* v. *State,* 53 So. 681, and also the Mississippi cases of *Banfil* v. *Byrd,* 84 So. 227; *United States Fidelity & Guaranty Co.* v. *State to use of Hardy,* 83 So. 610. I think these Mississippi cases tend along the line of and support my argument and my contention. The statute laws of this state are so elementary and so well known with reference to searches and seizures that I am sure it is needless to refer to the statutes specially, surely there was not the slightest attempt to comply with them in the instant case by the constable and his deputy.

They had no search warrant of any kind whatever. They had not any warrant for the arrest of defendant (appellant here). At the time the search and seizure was made, he was not charged with any crime. It would be quite different indeed if these officers had had a warrant for him

and had reasonable cause upon which to proceed to a search of his houses and premises. Here we have a bold and daring and dangerous invasion of a man's home by an officer and his deputy without the least shadow of legal authority and without any sort of search warrant or other legal process whatever and at the time not even any crime charged against him in any court. In the light of reason, in the name of the rights of the people, in view of the Federal Constitution and our own state Constitution and our statute laws, in the interest of the general and public good, in behalf of the constitutional liberties and guaranties of the people, I urge this court to render a judgment and decision not only reversing this case, but acquitting the appellant absolutely.

I might here add that I feel positive under the many decisions of this court (I am sure it is not necessary to cite them), the instruction the court below gave the state was entirely erroneous, because the case was a circumstantial one, and the instruction did not have in it the theory, "and to the exclusion of every other reasonable hypothesis." But I say in a final word, I am basing my fight and contention on the fundamental constitutional provisions imbedded in our national and state constitutions, that guarantee the people against unreasonable search and seizure in their persons, houses, papers and effects, and upon this I confidently, faithfully hope to win this case in this court.

*H. Cassedy Holden,* special assistant attorney-general for appellee.

1.   The prohibition of the Fourth Amendment to the Constitution of the United States against unreasonable search and seizure does not apply to the state but only to federal officers and agents. *Weeks* v. *U. S.,* 232 U. S. 383, 58 L. Ed. 652; *National Safe Deposit Co.* v. *Stead,* 232 U. S. 58; *State* v. *Peterson* (Wyo.), 194 P. 342, 58 L. Ed. 504.

2.   Courts do not concern themselves with the method by which evidence is secured; evidence otherwise admissible will not be excluded because it was wrongfully ob-

tained. 22 C. J. 192, citing many cases; *Adams* v. *New York,* 192 N. S. 585, 48 L. Ed. 575; *Weeks* v. *U. S., supra.*

3. It is to be noticed that although the motion of defendant, that the seized articles be returned to him, was denied, these articles were not offered in evidence against th defendant. There are no property rights in apparatus used for making whiskey nor in whiskey made in violation of the laws of the state. Such apparatus and the product thereof may be seized and destroyed by the proper officers. The defendant's motion was, therefore, properly denied. See section 2088, Hemingway's Code, and section 5, chapter 189, Laws of 1918.

4. The defendant consented to the search of his premises, thereby waiving the privileges set out in section 23, Constitution of Mississippi. See record 19, 20, 22; 24 R. C. L. par. 27, page 723.

In the cases cited by appellant there was no consent to the search and seizure given by the owner of the premises or his authorized agents. The searches and seizures, in these cases were made either surreptitiously, or in the absence of the owner, or over the protest of the owner or his agents.

5. The constitutional prohibition is against unreasonable searches and seizures. A reasonable search and seizure is not forbidden. A search of the person and effects of one arrested for intoxication, and the seizure of liquor found on his person, do not constitute an unreasonable search. *U. S.* v. *Murphy* (1920), 264 Fed. 842.

Officers who, through their sense of smell, are led to suspect that a violation of the law against manufacturing whiskey is in progress, may lawfully enter and search the premises without warrant and seize the utensils employed in such manufacture. *U. S.* v. *Borkowski,* 268 Fed. 408. A statute which provides that the sheriff or arresting officer, who becomes cognizant of the facts, or who finds liquor in such conveyances, shall seize the same, does not violate a constitutional provision against unreasonable seizure. *Maples* v. *State* (Ala.), 82 So. 183.

6. The defendant confessed his guilt to the officers. Record page 43. This confession, together with the testimony of the officers concerning the finding of the whiskey and the still, was sufficient and competent proof of the *corpus delicti,* and the introduction of the seized articles was not necessary and did not take place.

The judgment should be affirmed.

ANDERSON, J., delivered the opinion of the court.

The appellant, Tucker, was indicted and convicted in the circuit court of Lincoln county of the unlawful making of intoxicating liquor and sentenced to the penitentiary for a term of two years, from which judgment he prosecutes this appeal.

· The entire evidence on which the grand jury indicted the appellant, and upon which he was convicted, was obtained as the result of a search of one Farley, a constable of Lincoln county, and Calcote, his assistant, of the home and premises of the appellant, where they found a still and a quantity of distilled whisky, which they seized. This search and seizure was made by the constable and his assistant without a search warrant. Before the appellant was put upon trial in the circuit court he made a motion to quash the indictment which had been preferred against him on the ground that the evidence upon which it was based had been acquired by this illegal search and seizure. Appellant also before the trial was entered upon made an application to the court to have returned to him the still and the whisky so seized by the officers. The motion to quash the indictment and the application for the return of his still and whisky were heard together. The evidence showed that the appellant's home was searched by Farley, the constable, and Calcote, his assistant, without any search warrant, and without the consent of the appellant, and that a still and whisky were found and taken possession of.

The court overruled the motion to quash the indictment, as well as the application of the appellant for the return of the still and whisky. There was then a trial on the indictment, and the only evidence offered against the appellant (which was all the evidence in the case) was that of the constable and his assistant who made the search and seizure, whose knowledge of the facts testified to by them was acquired exclusively in making such search. However, the still and whisky seized were not exhibited to the jury. They testified as to the finding of the still and whisky, in short, showed by their evidence the guilt of the defendant to the satisfaction of the jury. This evidence was objected to by the appellant on the ground that it had been obtained in violation of the Fourth and Fifth Amendments of the Constitution of the United States and of sections 23 and 26 of the Constitution of this state.

The Fourth Amendment to the Constitution of the United States and section 23 of the Constitution of this state, although they vary slightly in language, are identical in purpose and substance. Section 23 of the Constitution of this state provides:

"The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized."

The provision of the clause in the Fifth Amendment of the Constitution of the United States and the clause of section 26 of our Constitution here invoked are almost in identical language. The clause in question in the Fifth Amendment of the Federal Constitution provides that no person shall be compelled in a criminal case "to be a witness against himself," and the corresponding clause in section 26 provides that in such cases no person shall be compelled "to give evidence against himself."

There is no federal question involved in this case for it was held in *Weeks* v. *U. S.*, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C,

1177, that the Fourth Amendment to the Federal Constitution was directed alone to the exercise of federal authority and had no application to state action. And the same is true of the clause in question of the Fifth Amendment of the Federal Constitution, as is manifest from the language of the amendment itself.

So there is involved in this case the question whether the provisions of our Constitution above referred to were violated in the conviction of appellant. Like provisions are found in the Constitutions of most, if not all, of the states of the Union, as well as the Federal Constitution. Justice BRADLEY of the supreme court of the United States in *Boyd* v. *U. S.,* 116 U. S., 616, 6 Sup. Ct. 524, 29 L. Ed. 746, gives a very full and clear discussion of their history and purpose. He said among other things:

"We have already noticed the intimate relation between the two amendments. They throw great light on each other. For the 'unreasonable searches and seizures' condemned in the Fourth Amendment are almost always made for the purpose of compelling a man to give evidence against himself, which in criminal cases is condemned in the Fifth Amendment, and compelling a man 'in a criminal case to be a witness against himself,' which is condemned in the Fifth Amendment, throws light on the question as to what is an 'unreasonable search and seizure' within the meaning of the Fourth Amendment."

He quotes at length from an opinion rendered by Lord CAMDEN in 1765 in the case of *Entick* v. *Carrington,* 19 Howell, St. Tr. 1029, and said of that opinion by Lord CAMDEN that the principles therein laid down— "affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employees of the sanctity of a man's home and privacies of life. It is not the breaking of his doors, and the rummaging in his drawers, that constitutes the essence of the offense; but it is the invasion of his indefeasible right of

personal security, personal liberty, and private property, where that right has never been forfeited by his conviction of some public offense. It is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime or to forfeit his goods, is within the condemnation of that judgment. In this regard the Fourth and Fifth Amendments run almost into each other."

*Weeks* v. *U. S., supra,* is illuminating on the question involved. It is there said in speaking of Boyd's Case:

"It was in that case demonstrated that both of these Amendments contemplated perpetuating, in their full efficacy, by means of a constitutional provision, principles of humanity and civil liberty, which had been secured in the mother country only after years of struggle, so as to implant them in our institutions in the fulness of their integrity, free from the possibilities of future legislative change."

In *Silverthorne Lumber Co.* v. *U. S.,* 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319, the supreme court held that knowledge gained by an officer representing the Federal government in seizing papers in violation of the owner's constitutional protection against unlawful searches and seizures could not be used by the government in a criminal prosecution of such person. The facts of that case and the pertinent part of the opinion of the court written by Justice HOLMES are as follows:

"The facts are simple. An indictment upon a single specific charge having been brought against the two Silverthornes mentioned, they both were arrested at their homes early in the morning of February 25, 1919, and were detained in custody a number of hours. While they were thus detained representatives of the Department of Justice and the United States marshal, without a shadow of au-

thority, went to the office of their company and made a
clean sweep of all the books, papers, and documents found
there.  All the employees were taken or directed to go to
the office of the district attorney of the United States, to
which also the books, etc., were taken at once.  An appli-
cation was made as soon as might be to the district court
for a return of what thus had been taken unlawfully.  It
was opposed by the district attorney so far as he had found
evidence against the plaintiffs in error, and it was stated
that the evidence so obtained was before the grand jury.
Color had been given by the district attorney to the ap-
proach of those concerned in the act by an invalid sub-
pœna for certain documents relating to the charge in the
indictment then on file.  Thus the case is not that of knowl-
edge acquired through the wrongful act of a stranger, but
it must be assumed that the government planned or at all
events ratified the whole performance.  Photographs and
copies of material papers were made and a new indictment
was framed, based upon the knowledge thus obtained.  The
district court ordered a return of the originals, but im-
pounded the photographs and copies.  Subpœnas to pro-
duce the originals then were served, and on the refusal of
the plaintiffs in error to produce them the court made an
order that the subpœnas should be complied with, although
it had found that all the papers had been seized in viola-
tion of the parties' constitutional rights.  The refusal to
obey this order is the contempt alleged.  The government
now, while in form repudiating and condemning the illegal
seizure, seeks to maintain its right to avail itself of the
knowledge obtained by that means which otherwise it
would not have had.

"The proposition could not be presented more nakedly.
It is that although, of course, its seizure was an outrage
which the government now regrets, it may study the pa-
pers before it returns them, copy them, and then may use
the knowledge that it has gained to call upon the owners
in a more regular form to produce them; that the protec-
tion of the Constitution covers the physical possession, but

not any advantages that the government can gain over
the object of its pursuit by doing the forbidden act. *Weeks*
v. *U. S.*, 232 U. S. 383, 58 L. Ed. 652, L. R. A. 1915B, 834,
34 Sup. Ct. Rep. 341, Ann. Cas. 1915C, 1117, to be sure,
had established that laying the papers directly before the
grand jury was unwarranted, but it is taken to mean only
that two steps are required instead of one.  In our opinion
such is not the law.  It reduces the Fourth Amendment to
a form of words.  232 U. S. 393.  The essence. of a pro-
vision forbidding the acquisition of evidence in a certain
way is that not merely evidence so acquired shall not be
used before the court, but that it shall not be used at all.
Of course, this does not mean that the facts thus obtained
become sacred and inaccessible.  If knowledge of them is
gained from an independent source they may be proved
like any others, but the knowledge gained by the govern-
ment's own wrong cannot be used by it in the way pro-
posed.  The numerous decisions, like *Adams* v. *New York*,
192 U. S. 585, 48 L. Ed. 575, 24 Sup. Ct. Rep. 372, holding
that a collateral inquiry into the mode in which evidence
has been gotten will not be allowed when the question is
raised for the first time at the trial, are no authority in the
present proceeding, as is explained in *Weeks* v. *United
States,* 232 U. S. 383, 394, 395, 58 L. Ed. 652, 656, 657, L. R.
A. 1915B, 834, 34 Sup. Ct. Rep. 341, Am. Cas. 1915C, 1117.
Whether some of those decisions have gone too far or have
given wrong reasons, it is unnecessary to inquire; the prin-
ciple applicable to the present case seems to us plain."

In *Gouled* v. *U. S.*, 255 U. S., 298, 41 Sup. Ct. 261, 65 L.
Ed. —, it was held among other things that the admission
in evidence against an accused in a criminal case facts
obtained by an illegal search of his premises and seizure of
his private papers contravened the Fifth Amendment of
the Constitution of the United States securing to an ac-
cused immunity from self-incrimination.

*Amos* v. *U. S.* (decided Feb. 28, 1921), 255 U. S. 313,
41 Sup. Ct. 266, 65 L. Ed. —, is directly in point.  The
defendant in that case was convicted on two counts in an

indictment, one charging the removal of whisky on which the revenue tax had not been paid, to a place other than a government warehouse, and the other of having sold whisky on which the tax required by law had not been paid. After the jury had been impaneled, but before any evidence was offered the defendant presentd to the court a petition praying that there be returned to him certain property of his seized by Coleman and Rector, officers of the government, from his house and store without a search warrant in violation of the Fourth and Fifth Amendments to the Constitution of the United States which the government intended to use as evidence against him on his trial. This petition was denied. Coleman and Rector, the government officers making the seizure, were then called as witnesses on behalf of the government and testified that as deputy revenue collectors they went to the defendant's home, and not finding him there, but finding a woman who said she was his wife, told her that they were revenue officers and had come to search the premises for a violation of the revenue law; that thereupon she opened the store, and the witnesses entered and in a barrel of peas found a bottle containing whisky illicitly distilled; that they then went into the home of the defendant and in searching found two bottles of whisky under a quilt on a bed. One of the bottles contained a quart, and the other a little more than a quart, of distilled whiskey. The government introduced in evidence a part of this whisky, which Coleman testified was found by them in making this search. On cross-examination both of these witnesses testified that they had no warrant either for the arrest of the defendant or the search of his premises, and stated that the search was made in daytime in the absence of the defendant, who did not appear on the scene. After these two government witnesses had testified as above, counsel for the defendant moved the court to strike out their testimony, on the ground that it was obtained in violation of the Fourth and Fifth Amendments to the Constitution of the United States, which motion was overruled. The court held this was

error; that the effect of the ruling of the trial court was to force the defendant to give evidence against himself in violation of the Fifth Amendment of the Constitution.

The courts are unanimous in holding that the constitutional guaranty against self-incriminations is violated by a confession of guilt extorted from a defendant by duress. What is the difference in principle in forcing a defendant to speak against himself by word of mouth, and in forcing, by an unlawful search, the secret things of his home to give evidence against him? We see none. His home is as sacred from illegal force as his person. When his home speaks, he speaks—they speak the same voice. The invaders of his home are barred from testifying, not only as to his forced confessions of guilt made by word of mouth, but also as to such confessions made through the contents of his home and premises. The securities afforded by our Constitution against unreasonable search and seizure, and self-incrimination, are not to be given a narrow construction. They are a part of our Bill of Rights. They stand along with the right of trial by jury. They are among the chief fundamentals of our system of government. It is better that the guilty escape punishment in some instances than that these securities of liberty be violated.

There is ample authority holding that the courts will not stop to inquire into whether evidence offered was illegally obtained, and that, even where it was secured by an illegal search of the premises of the defendant, it will be received, and the only remedy of the defendant is an action for damages against those making the search. But we decline to follow these cases. In our judgment they in a large measure strike down the liberties intended to be secured by these constitutional guaranties—their view we think is too narrow. We adopt as the better rule that laid down by the supreme court of the United States in the cases above referred to. And in doing so we follow that court, which is our greatest exponent of constitutional law, and at the same time promote uniformity of state and Federal decision, which would be of sufficient weight to re-

solve any doubt, if there were such. Therefore we hold
that the state's witnesses in this case should not have been
permitted to testify as to what they saw in the home of the
defendant, which they had illegally invaded, because in so
doing it was tantamount to forcing the defendant to give
evidence against himself.

*Reversed, and defendant discharged.*