HARTFIELD *v.* STATE.

Division B.   Nov. 6, 1950.

No. 37655  (48 So. (2d) 507)

**J. H. Stevens,** for appellant.

**George H. Ethridge**, Assistant Attorney General, for appellee.

**Roberds, J.**

Appellant, a member of the Negro race, was convicted of assault and battery upon J. F. Green, the Sheriff of Greene County, with intent to kill him, and sentenced to the state penitentiary for five years.

She contends that Green had no authority to arrest her and that she had the right to use reasonable force to prevent such unlawful arrest, and that her request for a peremptory instruction should have been granted.

The legal principles are grounded in this state of facts:

Appellant and her husband occupied as their home a residence a short distance south of McLain in said county. The house consisted of four rooms. It faced east upon a public road. The north two rooms were used in the operation by appellant and her husband of a cafe, or eating place. In the west of the north two rooms the food was prepared, and in the east it was served. The two south rooms of the building were used and occupied by appellant and her husband as sleeping and living quarters. There was a fence entirely around the back yard. A gate at the southwest corner of the southwest room led into this yard. The west room on the north extended farther west than the west room of the two south rooms. At the southwest corner of the west north room there was a door leading into the back yard. Also from the kitchen a door opened into the west north room.

On the 15th day of October, 1949, about two thirty o'clock in the afternoon, Mr. Green, the sheriff, drove

to this place in his automobile. He stopped his car in front of this dwelling, and in, or near, the public road. He went through the gate into the back yard. He had no search warrant or warrant for the arrest of any person. We now give his version of what happened, as the jury might have accepted that in convicting the appellant. He said that after he entered the back yard and as he went around the building he thought he smelled whiskey. He saw appellant standing to the rear of the building in this yard. She had a bag in her hand. He also saw on the ground two bottles of gin and a bottle of whiskey. He told her he was going to arrest her. She asked if he had a warrant. He said he did not, and didn't need any warrant. "I placed her under arrest for possession of intoxicating liquor, approached her, and after she was placed under arrest demanded that she give me the bag". She refused, and, as he says, "We had a little scuffle over the whiskey". He then struck her with his blackjack; told her she was under arrest; that he would dislike to hurt her "worse than I had"; that he was going to take her to jail; took the bag from her and found it contained a bottle of whiskey. He picked up the whiskey and one bottle of gin from the ground, and she picked up the other bottle of gin. She then seized, or attempted to seize, an axe. He drew his pistol upon her and told her to drop the axe, which she did. Appellant says she never picked up an axe. The foregoing is the first act of the drama. The next follows.

The sheriff, with pistol drawn upon appellant, told her she was going to jail. She went into her bedroom to properly adorn her person for that journey and destination, the sheriff following her with drawn pistol. They entered the door at the southwest corner of the west north room, came through the kitchen and entered the living and sleeping quarters of appellant through the door leading from the north room into the southwest bedroom. There were other persons in the north, or cafe, part of

the building. The sheriff told them to clear out; that he was closing up "the joint" and taking appellant to jail. They "cleared out" in less time than it takes to record the event. The sheriff, with pistol exhibited, stood at the door to the bedroom where appellant was beautifying herself. He appeared impatient to be on the journey. After hurried embellishments and preparations for a stay of uncertain duration in jail, appellant came back through the door where the sheriff was standing, yet with drawn pistol. She protested. It seems she did not want to go to jail. He says she grabbed for his pistol and they immediately went into a wrestling match. Whether the sheriff succeeded in .obtaining a headlock, a pile-driver or a body-slam is not clear, but the results were the same. He threw her to the floor. He shot her through the leg, "After she was flat on her back on the floor." He then made another shot which did not hit her. He says he shot to scare and it was in the direction of the same, or the other, leg. She says it was at her head and the miss was the result of jerking her head to one side. Both bullets went into the floor. This seems to have ended all resistance on the part of appellant. The sheriff ordered her to get up, and "told her I ought to kill her." He put handcuffs on her, placed her in his automobile and carried her to a doctor. He says that after this contest he noticed he had a slight cut on one arm about half an inch long. He thought it was made by a knife which he says appellant had. She says she had no knife, that the cut, if made during the melee, was from a broken bottle in the possession of the sheriff. In any event, this is the wound and these are the circumstances, for which and under which appellant was convicted of assault and battery, with intent to kill and murder, and sentenced to the penitentiary for five years.

The case involves two questions: Was this a lawful arrest? If not, did appellant use more force than was reasonably necessary to resist it?

The Attorney General, through an able assistant, says that, while his best judgment is the arrest was lawful, he has grave doubts about the matter, and he submits the question to the Court as the protector of human rights. The district attorney, in response to objection to this evidence at the trial, stated the sheriff had the legal right to make the arrest because appellant was committing a misdemeanor in his presence. Section 2470, Miss. Code 1942. It is also urged on the appeal that the sheriff had reason to think a crime was being committed because he thought he smelled whiskey after entering the back yard: that an officer may detect a crime through one of his natural senses; that he may "smell" a crime. Goodman v. State, 158 Miss. 269, 130 So. 285; Bone v. State, 207 Miss. 868, 43 So. (2d) 571. ■■ ■ The trouble about both arguments is that the sheriff was a trespasser in this back yard. The yard was a constituent part of the home of appellant and her husband. The premises were private —not public. He had no search warrant, or warrant for the arrest of anyone. He had no right or authority to go into the yard, and no evidence of crime he there obtained under these circumstances was competent. Tucker v. State, 128 Miss. 211, 90 So. 845; Orick v. State, 140 Miss. 184, 105 So. 465; Canteberry v. State, 142 Miss. 462, 107 So. 672; Castillow v. State, 160 Miss. 473, 135 So. 205; Patton v. State, 160 Miss. 274, 135 So. 352; Boyd v. State, 206 Miss. 573, 40 So. (2d) 303. This fundamentally is a different case from that where an officer is in a place he has a right to be—such as a public place to which all persons are invited—and he there sees, or detects through one of his natural senses, a crime being committed in his presence, as was the fact in some of the cases above cited. All the evidence of crime obtained by the sheriff under the circumstances here was incompetent. If the sheriff suspected that whiskey was being unlawfully kept or sold on said premises, it would have been a simple matter to have obtained a warrant to search them.

■■ ■ The reasonableness of the amount of force used by appellant to resist the arrest disappears because, first, it is clear from the foregoing she did not use unnecessary force, and, second, the force she did use did not prevent the unlawful arrest.

Violations of private rights in matters of search and seizure seem to be increasing. It may be appropriate to say that Section 23 of the Mississippi Constitution provides that "The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized."

The history of the adoption of this section discloses the aversion of the people to the right and power of the government to invade the homes and private property of the citizens without proper legal authority. Such arbitrary power has always been distasteful to free men, and especially to American and English free men. It is better that some crime go unpunished than that these fundamental rights be trampled under foot. No government has ever been free of crime even when ruled by one with absolute dictatorial power. The Constitution provides the manner of exercising the power of search and seizure and the members of this Court have sworn to uphold the Constitution. It is a poor example to the citizen when the State itself, through its agents, violates the fundamental law of the land.

Reversed and appellant discharged.