WILLIAMS *v.* STATE.

Jan. 5, 1953

No. 38570          14 Adv. S. 28          61 So. 2d 793

*O. O. Weathersby* and *R. S. Tullos,* for appellant.

*J. T. Patterson,* Assistant Attorney General, for appellee.

ETHRIDGE, J.

The principal question in this case is whether a lawful entry under and by authority of a search warrant for

intoxicating liquor precludes a legal seizure of recognized stolen property found on the premises searched, and whether evidence of this stolen property obtained by means of this search and seizure is admissible against appellant, who was charged with theft of it.

Appellant, Monroe Williams, was convicted in the Circuit Court of Smith County of grand larceny, for the theft of two butane gas heaters and one twenty-five gallon butane gas bottle belonging to named trustees of the Mt. Zion Baptist Church. The theft occurred on Saturday night, February 16, 1952. Appellant was tried, convicted of this crime, and sentenced to five years in the state penitentiary. He was convicted principally upon the testimony of an asserted confederate in the crime, Earl Beavers, and upon the evidence obtained by the search of his premises as described subsequently. There was also circumstantial evidence for the State. Appellant testified and denied the facts of the crime as evidenced by the State's witnesses, particularly the testimony of his asserted confederate, Earl Beavers. We will not detail the facts, but if the evidence obtained as a result of the search of appellant's home was admissible, the issues of fact in the trial were properly questions for the jury, and the conviction is supported by the evidence.

A. E. Bounds, Sheriff of Smith County, testified that he was first notified of the theft on Sunday morning about 9:30 A. M., and that he went to the Church with Hershel Moss and Pet Robinson, deputy sheriffs. After leaving the Church, they went down to a justice of the peace and swore out an affidavit for a search warrant for appellant's home, and obtained the search warrant for the purpose of searching for intoxicating liquors. The search warrant authorized the officers to enter appellant's premises to search for intoxicating liquors, stills, and integral parts thereof. When the officers arrived at appellant's home at about 1 P. M. of the same day, appellant was not present. A copy of the search

warrant was served upon his wife. The officers then entered the premises and made a search for intoxicating liquors. During this search, they also found the tank and the two heaters which had been stolen from the Church. The stolen property was found in the open yard by the side of appellant's smokehouse, which was located about fifteen or twenty steps to the rear of his residence. The Sheriff said that they were hunting for whiskey, and that they found some, two half-pints, in the road nearby but not on appellant's premises. He further said:

"Q. You weren't looking for a butane system, were you?

"A. I had it in my mind if I found anything looking around. I had the paper with me and, if I located it, I would know what I was doing."

When he first saw the butane system he did not know it was the stolen property, but upon examining it and the serial numbers, he ascertained that it was. The stolen goods were not covered with anything but were behind the smokehouse on the outside of it. Before the officers left appellant appeared and went up to the house with them, where the officers loaded the stolen property on their car. Although the record is not clear on this point, apparently the officers arrested appellant at the same time. However, even if that is the fact, the search was not incident to the arrest. The sheriff further testified that they were about four or five miles from a justice of the peace, but that they did not feel that it was necessary to get another search warrant for the stolen property after they had found it.

Hershel Moss, deputy sheriff, testified that he went with the sheriff to the church. He further said:

"Q. The same day did you have an occasion and did you search the premises of Monroe Williams for anything?

"A. Yes, sir. We searched it for intoxicating liquor. At that time we knew nothing about where the butane system was.

"Q. You did search the premises for intoxicating liquor?

"A. We were just looking. We had other complaints about them having whiskey there. We had been there before, but we hadn't searched it before."

He stated that they searched the premises for whiskey and found some in the road. He then testified:

"Q. On the adjacent premises, it was?

"A. Yes, sir. I found the butane system before we found any whiskey.

"Q. Were you searching for whiskey when you found it?

"A. We were just looking around the house for whatever we found. If we found the butane system, we found it and got it; and, if we found whiskey, we got that."

Moss said, with reference to looking for whiskey, "we were looking for both—I was." He then stated:

"A. When I was at the church, I asked the question if they knew of anybody that came by there going to a certain place on the river where they were handling whiskey, and they told me they did and they gave me these boys' names, Earl Beavers—

"Q. And Williams?

"A. And Williams. I told them, 'We have had lots of complaints about whiskey and we are going to search for whiskey and maybe find the system.'

"Q. I see, you need not explain it all. You would probably find the system down there, too, I believe you said you told them?

"A. Yes, sir. . . .

"Q. You say you told them you were looking for the butane system, too?

"A. Sure.

"Q. Why didn't you get a search warrant for the butane system?

"A. I didn't figure it was necessary.

"Q. You didn't figure it was necessary?

"A. I think I understand the law and I figured if I found anything that was there in violation of the law that I had a right to pick it up regardless of what the search was for."

Pet Robinson, deputy sheriff, also testified concerning the essential facts outlined above.

Appellant made proper objections to this evidence, and now argues that it was erroneously admitted. We think that the trial court was warranted in finding that the sheriff had probable cause for obtaining the issuance of the search warrant for intoxicating liquors, and that the search warrant for that commodity was legal and proper. Hence the officers were lawfully on the premises. The present question is whether they could seize stolen property found there.

In Tucker v. State, 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377 (1922), Tucker was convicted of the unlawful making of intoxicating liquor. Officers without a search warrant searched appellant's home and premises, and found a still and some whiskey. The court held that Mississippi Constitution, Secs. 23 and 26, were violated by this search, and that evidence taken thereby was illegally obtained and not admissible in evidence. Miss. Constitution, Sec. 23, provides that the people shall be secure from "unreasonable seizure or search," and that no warrant shall be issued without probable cause specially designating "the place to be searched and the person or thing to be seized." Miss. Constitution, Sec. 26, provides that no person in a criminal case shall be compelled to give evidence against himself. The court adopted the Federal rule with reference to evidence obtained by an illegal search. The *Tucker* case was re-

affirmed in Owens v. State, 133 Miss. 753, 98 So. 233 (1923), and numerous later decisions.

In Reynolds v. State, 136 Miss. 329, 101 So. 485 (1924), appellant was convicted of the unlawful possession of a still, which was found on appellant's premises. The search warrant only authorized a search for intoxicating liquors. The Court said:

"It is next contended that the search warrant did not authorize the search for a still or the integral parts of a still, and it was incompetent to admit the evidence of the finding of a still when the search warrant only authorized a search for intoxicating liquors. It seems to us that the reply to this contention is that the officers were legally in the residence and saw the still there, which by law was made a crime; that is to say, it is made a crime by law to have a still, or any integral part thereof, except for the purposes named in the exceptions in the statute. The sheriff testified that this still had been used to manufacture intoxicating liquors and was used for that purpose exclusively. Being lawfully in the residence of appellant, and finding these contraband articles therein, it became and was the duty of the sheriff to seize them and to deal with them as provided by law. We are not concerned here with whether the officer would have authority to issue a search warrant for a still under Section 2088, Hemingway's Code (Chapter 115, Laws of 1908), or under any other statute. The warrant which the sheriff did have made his entry into the house lawful, and, being lawfully there, he had a right to seize articles found which the law prohibited any person having in his possession."

We think that the *Reynolds* case is applicable to the present facts. The officers were lawfully on the premises, and saw this stolen property. Its possession was known to be illegal, and they had the right to seize it.

Appellant relies upon Cofer v. State, 152 Miss. 761, 118 So. 613 (1928). Cofer was convicted of murder.

Pruitt was killed at night by unknown persons, and four empty shotgun shells were found by the body, all being 12-gauge buckshot shells. The theory of the state was that the assassination was due to a conspiracy by appellant and others, and that on the night in question appellant drove the death car. The testimony was largely circumstantial. Important evidence was the introduction by the State of four loaded buckshot shells of the same kind as the empties found near the body. The sheriff testified that several weeks after the homicide, he procured a search warrant authorizing him to enter and search appellant's home for intoxicating liquor. No one was at home, so the sheriff entered the house, broke open a trunk, and found in it two bottles partially filled with whiskey, and also found the four loaded buckshot shells which were introduced in evidence. The court reversed and remanded the case, on the grounds that the shells were not specially designated in the warrant as the thing to be seized and that the shells were not ''contraband'' and their possession was not ''unlawful per se.'' The seizure violated Miss. Const., Secs. 23 and 26. In seizing what was not designated in the warrant and that which it was not unlawful to possess, ''the officer was acting as if he had no warrant.'' The court distinguished the *Reynolds* case by saying that there the officers were lawfully in the residence and ''found contraband articles which the law prohibited having in his possession,'' namely, the still. It pointed out that there is no law prohibiting the possession of shells, and that they were not ''contraband,'' as was the still in *Reynolds*.

The *Cofer* opinion cited with approval Marron v. U. S., 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231 (1927). Federal prohibition agents had obtained a warrant to search Marron's premises for the possession of intoxicating liquor and articles for their manufacture. They found that the place was used for retailing and drinking intoxicating liquors. While searching, they noticed a ledger showing

inventories of liquor, receipts, payments to police officers and various bills against petitioner, and seized this ledger and the bills. Marron was convicted of conspiring to maintain a nuisance and his conviction was affirmed. The court first said that U. S. Const. Amendments 4 and 5 require that search warrants describe the things to be seized, that the officers' authority was so limited, and that hence the seizure of the ledger and bills was not authorized by the search warrant. However, the officers were authorized to arrest for a crime being committed in their presence, and they lawfully arrested Birdsall who was in charge of the premises, apparently a saloon or speakeasy. Hence the ledger and bills were lawfully seized as an incident of the arrest of Birdsall. The *Marron* case has not been used by the Federal Courts as a limitation upon a search under search warrant, but as authorizing search and seizure as an incident to a lawful arrest.

In 169 A. L. R. 1419, 1424 (1947), is an annotation on "search incident to one offense as justifying seizure of instruments of or articles connected with another offense." The general rule is stated to be that property relating to an offense other than the one incident to which a search is being made under the authority of a search warrant cannot be seized under the authority of the warrant. However, the following exception is recognized: ▇▇ "Entry under and by the authority of a search warrant is not, however, generally regarded as precluding a legal seizure of instruments of or articles connected with another offense being actually committed on the premises entered and discovered by the searching officer, or of articles of a contraband nature."

State v. McKindel, 148 Wash. 237, 268 Pac. 593 (1928), is substantially similar to the instant case. Appellant was convicted of receiving and concealing stolen goods. Two places of business in Seattle had been burglarized and clothing stolen. It was reported to the officers that

defendant was trafficking in liquor, so a search warrant for intoxicating liquor was obtained for appellant's premises. Officers entered the room and found empty bottles but no liquor, but while making the search they saw in plain sight some of the stolen property, wearing apparel, which had been previously taken from the places burglarized and with which description the officers were familiar. They recognized this property and seized it. Appellant objected to this evidence upon his trial for the theft. The court upheld its admission. It said that the officers were lawfully on the premises, and that when they saw the stolen goods, it was their right and duty to seize the same. Possession of stolen property was an "evidence(s) of crime visible to them." The court also observed that the seizure was an incident to the arrest, but its decision was based principally upon the first ground.

In the instant case, the officers were lawfully upon the premises. They found the stolen property, ▇▇▇ the possession of which was illegal and the equivalent of "contraband" or of a contraband nature. They seized the property unlawfully in appellant's possession. The seizure was an incident of a lawful search, during which the officers found the stolen property. See 9 Words and Phrases, p. 206, 1952 Supp., p. 66, and 17 C. J. S., pp. 288-289, (defining "contraband"). Where entry upon the premises is lawful, as was the one here, contraband open to observation may be seized. 79 C. J. S., Searches and Seizures, Sec. 17, states that "among those articles the possession of which has been declared to be illegal per se, and the seizure of which is not within the constitutional guaranty, are . . . stolen property . . . " State v. Hawkins, 240 S. W. 2d 688 (Mo. 1951); Patterson v. Commonwealth, 252 Ky. 285, 66 S. W. 2d 513 (1933); Glennon v. Britton, 155 Ill. 232, 40 N. E. 594 (1895). To the same effect is Cornelius, Search and Seizure (2d Ed., 1930), Sec. 231. Of course, the officers must be lawfully upon the premises, with a proper search warrant based upon

probable cause, and the property seized which was not specified in the search warrant must be property the possession of which is unlawful, in order to be incident to the authorized search. The seizure of the stolen butane heaters and bottle come within the stated narrow confines of the exception discussed herein and applied in the *Reynolds* case. This is an exception to the general rule excluding property seized which was not described in the search warrant.

We find no error in the denial by the circuit court of the appellant's motion for continuance. This is largely within the discretion of the trial court, and the facts indicate no abuse of that power. Code of 1942, Sec. 1520.

Affirmed.

*Roberds, P. J.*, and *Hall, Kyle* and *Arrington, JJ.*, concur.