350 So.2d 1340 (1977)
Woodrow ISAACKS
v.
STATE of Mississippi.
No. 49542.
Supreme Court of Mississippi.
September 14, 1977.
Rehearing Denied November 16, 1977.
*1341 Alexander & Johnston, William B. Alexander, Cleveland, for appellant.
A.F. Summer, Atty. Gen. by Pete J. Cajoleas, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before INZER, P.J., and SUGG and LEE, JJ.
INZER, Presiding Justice, for the Court:
Appellant, Woodrow Isaacks, and his wife, Vera Isaacks, were jointly indicted in the Circuit Court of the First Judicial District of Bolivar County for the crime of unlawful possession, growing and manufacturing marijuana with the intent to deliver. After a trial, Mrs. Isaacks was acquitted, and Mr. Isaacks was found guilty of the lesser included offense of possession of more than one ounce of marijuana. He was sentenced to serve two years in the State Penitentiary and to pay a fine of $2,000. From this conviction and sentence he appeals. We reverse and remand.
This case involves the question of whether evidence seized as a result of a search made under the authority of a search warrant, which the state admits was void, is admissible in evidence over the objection of the owner of the premises searched. We hold that a search made under a void warrant is illegal and the fruits of an illegal search are not admissible in evidence.
The facts in this case reveal that on Monday, September 9, 1974, the officers of Bolivar *1342 County, armed with a search warrant, went to the residence of appellant and his wife and searched their premises. Nothing was found in or near the residence, but approximately one-half mile from the residence the officers found and seized 1,030 stalks (3,620 pounds) of plants, which after a laboratory test were determined to be marijuana. After the plants were seized, appellant and his wife were arrested and were later indicted by the grand jury.
Mr. and Mrs. Isaacks filed a motion to suppress the evidence seized as a result of the search alleging that the search warrant was void for several reasons. A hearing was had on the motion to suppress, and the court found that the search warrant was "completely and utterly defective for fifteen or twenty reasons." In spite of this finding, the court overruled the motion to suppress and allowed the state to introduce the evidence seized as a result of the search.
The testimony on the motion to quash revealed that on Friday, September 6, 1974, Officers Simpson, Merritt and Woods, acting on a tip from an informant, went to the property adjacent to the property owned by appellant and his wife. The two tracts of land are separated by a stream known as Snake Creek. The stream was several yards wide and its banks were twenty-five to thirty feet deep. The officers carried with them cameras equipped with telephoto lens and field binoculars. Although this was a rather densely wooded area, the officers saw and took pictures of plants growing on Isaackses' land which in their opinion were marijuana plants. These plants were about 35 yards from the bank of the creek. Officer Simpson went across the creek to the east bank which was on appellant's property. He said his purpose for going across the ditch was to ascertain the quantity of marijuana. When asked if it was not for the purpose of getting closer so that he could be sure that it was marijuana, he said that he was positive in his own mind that the plants were marijuana plants, but to be positive you have to send it to the lab.
The officers continued a surveillance of the property, and on the next day Officer Simpson saw what, in his opinion, was another patch of marijuana growing on the Isaackses' land. The following day was Sunday and Officer Simpson again observed what, in his opinion, was another patch of marijuana growing on the Isaackses' land.
The following day, after conferring with the County Attorney, Officer Simpson made an affidavit, the magistrate issued a search warrant and the officers conducted a search and seizure under the authority of this warrant, which turned out to be a void search warrant.
Appellant contends that the trial court was in error in refusing to suppress the evidence seized under the void search warrant. The state admits that the search warrant under which the seizure was made was void, but contends that the evidence seized as a result of the search was admissible for the reason that the officers could have gone on the property after seeing the marijuana and arrested Mr. and Mrs. Isaacks without a warrant, because they were committing a felony in their presence by growing marijuana on their land. The state also contends that the officers had a right to seize the marijuana under the "plain view" doctrine. In other words, the state is saying that although we seized the marijuana while making the search under a void warrant, the evidence is admissible because we could have, but did not use some other procedure to procure the evidence. This really amounts to nothing more or less than an attempt to circumvent the exclusionary rule.
In Tucker v. State, 128 Miss. 211, 90 So. 845 (1922), this Court, although not required to do so at that time, aligned itself with the Supreme Court of the United States and held that evidence obtained as a result of an illegal search was not admissible in evidence. In so holding the Court stated:
We adopt as the better rule that laid down by the supreme court of the United States in the cases above referred to. And in doing so we follow that court, which is our greatest exponent of constitutional law, and at the same time promote uniformity of state and Federal decision, *1343 which would be of sufficient weight to resolve any doubt, if there were such. Therefore we hold that the state's witnesses in this case should not have been permitted to testify as to what they saw in the home of the defendant, which they had illegally invaded, because in so doing it was tantamount to forcing the defendant to give evidence against himself.
(128 Miss. at 223, 224, 90 So. at 848).
In 1924 the legislature, in an attempt to circumvent the exclusionary rule, enacted Chapter 244, Laws of 1924, Section 3 thereof which reads as follows:
The testimony of any lawful officer or officers and the introduction as evidence of any intoxicating liquor or any still or appliance or receptacle used in the manufacture or transportation of the attempted manufacture or attempted transportation of intoxicating liquor, in the trial of any criminal case involving a violation of the prohibition laws of the state of Mississippi, shall not be rendered inadmissible or incompetent, by reason of the fact that such officer, or officers, was not armed with a due and proper search warrant authorizing the search of the building, room in a building, place or of the automobile or other vehicle in the course of which search the facts and information testified to were ascertained and discovered and the liquor, stills, and appliances for its manufacture or transportation were seized.
In Orick v. State, 140 Miss. 184, 105 So. 465 (1925), we held the act was unconstitutional and, among other things, said:
Section 23 of the Constitution, as construed by the court, commands the court to reject evidence obtained by an officer in violation thereof. The legislature commands the courts to admit such evidence. Which shall we obey? Is the legislature capable of repealing or amending the Constitution by a simple legislative act passed as other statutes are passed, and not referred to the people as provided for in section 273 of the state Constitution? We are sworn to uphold and obey the Constitution. The Constitution is essentially superior to the legislature, and the fact is that the court's right and duty is to declare the statute passed in violation of the Constitution to be null and void and of no effect. Our own court, at an early date in the state's history, held acts of the legislature unconstitutional.
(140 Miss. at 189, 190, 105 So. at 466).
Since our decision in Tucker, supra, we have consistently applied the exclusionary rule to the effect that evidence seized as a result of an illegal search is not admissible in evidence. Then, too, the Fourth and Fifth Amendments to the Constitution of the United States have been made applicable to the states and, we are bound to follow the decisions of the Supreme Court of the United States in this regard. So, it is no longer a question for this Court to decide whether it will follow the exclusionary rule. We must follow the decisions of the Supreme Court of the United States construing the Fourth Amendment.
The search in this case was made under the authority of a void warrant and was an unreasonable search which is prohibited by Section 23 of the Constitution of 1890. In Adams v. State, 202 Miss. 68, 30 So.2d 593 (1947), we held that where the officers were armed with a valid search warrant and failed to serve a copy to the owner of the premises, who was present until the search was completed, was an illegal search. The state contended that the serving of the warrant after the search was completed made the search legal. This Court said in response to this argument:
It was too late then to legalize retroactively the illegal search already finished, or to make the evidence obtained thereby admissible at the trial of appellant here. The search was, therefore, unreasonable, under the general rule that every search and seizure is unreasonable where it is not made according to law. 47 Am.Jur., at p. 533, Section 52. Thus appellant was thereby deprived of her right to security from unreasonable search guaranteed by Section 23, Constitution 1890, through the cooperation of the district attorney, contrary *1344 to the obligation of his office. This was not his purpose, but was, nevertheless, the effect of his activities on this occasion. (Emphasis added).
(202 Miss. at 76, 30 So.2d at 597).
It is likewise too late to make an illegal search in this case legal by saying that a legal search could have been made but in fact was not made.
In Joyce v. State, 227 Miss. 854, 87 So.2d 92 (1956), we held that officers investigating a livestock theft could testify as to what they had seen from a public road which ran by the house of Joyce. But having entered his property and searching without a valid warrant, they could not testify concerning facts learned as a result of their illegal entry. In the case before us, the officers could testify as to what they saw while observing from the adjacent property and likewise photographs taken on the adjacent property were admissible. But evidence obtained as a result of the illegal search, including the photographs taken during the illegal search, should have been excluded. See also, Lancaster v. State, 188 Miss. 374, 195 So. 320 (1940).
Only under certain circumstances may officers seize contraband in "plain view" without a warrant. They are (1) incident to a valid arrest, (2) where officers have a valid search warrant to search a given area for specific objects and in the course of the search come across contraband, (3) incident to "hot pursuit" of a fleeing suspect, or (4) incident to a search of a stopped automobile on probable cause or because of the mobility of the vehicle. In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Supreme Court of the United States in reference to the "plain view" doctrine said:
The limits on the doctrine are implicit in the statement of its rationale. The first of these is that plain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; Jones v. United States, 357 U.S. 493, 497-498, 78 S.Ct. 1253, 1256-1257, 2 L.Ed.2d 1514; Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828; Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663. (Emphasis added)
(403 U.S. at 468, 91 S.Ct. at 2039, 29 L.Ed.2d at 584).
It is clear from the foregoing statement that the argument of the state that the officers had a right, upon seeing what they thought to be marijuana growing on appellant's premises, to go on the property and seize the contraband without a warrant is without merit.
There is no doubt that probable cause existed for the issuance of the search warrant in this case, but probable cause does not justify a warrantless search or a search under a void warrant. In Coolidge v. New Hampshire, supra, the Court said:
As for the proposition that the existence of probable cause renders noncompliance with the warrant procedure an irrelevance, it is enough to cite Agnello v. United States, 269 U.S. 20, 33, 46 S.Ct. 4, 70 L.Ed. 145, decided in 1925:
"Belief, however well founded, that an article sought is concealed in a dwelling house, furnished no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause."
See also, Jones v. United States, 357 U.S. 493, 497-498, 78 S.Ct. 1253, 1256, 2 *1345 L.Ed.2d 1514; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319. ("[T]he rights * * * against unlawful search and seizure are to be protected even if the same result might have been achieved in a lawful way."). (Emphasis added).
(403 U.S. at 450, 451, 91 S.Ct. at 2030, 29 L.Ed.2d at 574).
It is apparent from the foregoing quote that the state's contention that, although the search was unlawful, the evidence is admissible because it could have been obtained in a lawful way is without merit.
It is also apparent from the decisions of the Supreme Court of the United States that the "plain view" doctrine does not eliminate the requirement that seizure of contraband discovered while in "plain view" must comply with the Fourth Amendment requirements and in the absence of "exigent circumstances" be based on a valid warrant. Furthermore, the fact that the evidence the officers anticipated seizing at a particular place turns out to be in plain view when the officers arrive, cannot justify their seizure without obtaining a valid warrant. Here, of course, the officers found the plants which, in their opinion, were marijuana at the place where they anticipated they would be, but they did not have a valid warrant and the seizure was unlawful.
We find no merit in the contention of the state that the evidence seized by the officers at the unlawful search was admissible because the officers could have arrested the appellant for committing a felony in their presence. The officers did not follow this procedure and the arrest of the appellant was not made until the unlawful search was completed and was made as a result of the unlawful search. There was no seizure as a result of the lawful arrest in this case.
In numerous cases the Supreme Court of the United States has held that there is no exception to the rule that illegally seized evidence is inadmissible at trial, no matter how relevant nor how trustworthy the evidence may be as an item of proof. The purpose of the rule being to deter overreaching conduct by officers prohibited by the Fourth Amendment to the Constitution. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).
The officers in this case did what they were required to do. They went to the proper officials to procure a search warrant. It was not their fault that the search warrant turned out to be void, but under the decisions of this Court and the decisions of the Supreme Court of the United States, the evidence seized under the authority of the void search warrant was not admissible. The trial court was in error in refusing to suppress this evidence and for this reason this case must be reversed and remanded. On another trial of this case, all evidence obtained as a result of the illegal search will be excluded.
For the reasons stated, this case must be and is reversed and remanded.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH, P.J., and BROOM and LEE, JJ., concur.
SUGG, ROBERTSON, and WALKER, JJ., dissent.
BOWLING, J., took no part.
SUGG, Justice, dissenting:
The majority holds that the growing marijuana plants seized were not admissible in evidence because the Fourth Amendment rights of the defendant were violated. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The facts in this case are readily distinguishable from the facts in Coolidge and the cases cited in Coolidge.
In our case officers observed marijuana growing on the land of defendant on three different days while they were standing on the property of another. They were able to identify the marijuana as such and took pictures of the marijuana with a camera equipped with a telescopic lens. Under these conditions it is my opinion that the officers had a right to seize the contraband because no search was involved and the *1346 seizure was not unreasonable. The fact that they obtained an invalid search warrant did not make the seizure unlawful because no contraband was recovered except that observed by the officers while they were standing on the land of other persons. Their observation of the growing marijuana was made without intrusion upon the property of the defendant.
In Coolidge, a search warrant was issued for an automobile owned by the defendant who was a suspect in a murder case. The Court held that the warrant was invalid because it was not issued by a neutral and detached magistrate. Coolidge's automobile was searched under the invalid warrant and vacuum sweepings taken from it were introduced in evidence in an attempt to show by microscopic analysis that it was highly probable that the murder victim had been in Coolidge's automobile. Against this factual background the Court held that the seizure and subsequent search of Coolidge's automobile was not incident to a valid arrest, that a warrantless search of the car was not justified on the ground of probable cause, and that the search of the automobile was not justified on the theory that the automobile was an instrumentality of the crime and subject to seizure because it was in plain view.
In support of the opinion limiting the doctrine of plain view the Court cited the following cases: Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514, 1518; Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828; Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663.
Coolidge and the cases cited by the Court are entirely different on a factual basis from the case at bar. One common theme runs through Coolidge and the other cases, namely, there was intrusion in a building or an automobile owned or occupied by the defendants in each of the cases.
In Taylor v. United States, supra, officers entered a garage and seized whiskey after catching the odor of whiskey coming from within and looking through a small opening and observing many cardboard cases which they thought contained whiskey. In Johnson v. United States officers entered a hotel room upon smelling burning opium and searched the room. In Trupiano v. United States, the officers had information that a distillery was located in a barn, could smell fermenting mash, heard a motor running, entered the barn and seized the distillery. In McDonald v. United States, officers entered a room after peeping over a transom and observing activities usually associated with a lottery. In Jones v. United States, officers entered the home of defendant and seized a distillery after observing mash running from a hose connected to defendant's home, detected the distinctive odor of hot mash, heard sounds from within the house, of voices and of a blower burner commonly used in that area to heat distilleries. In Chapman v. United States, officers, with the consent of defendant's landlord, during defendant's absence, entered his rented house through an unlocked window and seized a distillery and a number of gallons of mash. In each case the plain view did not occur until a search was in progress.
With reference to the plain view doctrine the Court stated in Coolidge:
What the `plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification  whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused  and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the `plain view' doctrine may not *1347 be used to extend a general exploratory search from one object to another until something incriminating at last emerges. (403 U.S. at 467, 91 S.Ct. at 2038, 29 L.Ed.2d at 583).
The Court then stated, "The rationale for the plain view exception is evident if we keep in mind the two distinct constitutional protections served by the warrant requirement." These two protections enunciated by the Court are:
First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that any intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity. See, e.g., McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; Chimel v. California, 395 U.S., at 761-762, 89 S.Ct. [2034], at 2039 [23 L.Ed.2d, at 692-693]. The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the `general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings. See, e.g., Boyd v. United States, 116 U.S., at 624-630, 6 S.Ct. [524], at 528-532 [29 L.Ed., at 748-751]; Marron v. United States, 275 U.S. 192, 195-196, 48 S.Ct. 74, 75-76, 72 L.Ed. 231 [236, 237]; Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431. The warrant accomplishes this second objective by requiring a `particular description' of the things to be seized. (403 U.S. at 467, 91 S.Ct. at 2038, 2039, 29 L.Ed.2d, at 583).
The Court then stated:
The `plain view' doctrine is not in conflict with the first objective because plain view does not occur until a search is in progress. In each case, this initial intrusion is justified by a warrant or by an exception such as `hot pursuit' or search incident to a lawful arrest, or by an extraneous valid reason for the officer's presence. And, given the initial intrusion, the seizure of an object in plain view is consistent with the second objective, since it does not convert the search into a general or exploratory one. As against the minor peril to Fourth Amendment protections, there is a major gain in effective law enforcement. Where, once an otherwise lawful search is in progress, the police inadvertently came upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous  to the evidence or to the police themselves  to require them to ignore it until they have obtained a warrant particularly describing it. (Emphasis supplied). (403 U.S. at 468, 91 S.Ct. at 2039, 29 L.Ed. at 583, 584).
In our case the seizure of the growing marijuana does not violate the constitutional protections of the warrant requirement of the Fourth Amendment because, (1) the officers observed the growing marijuana without intrusion on defendant's land while standing on the land of another person adjacent thereto, and (2) the seizure of the marijuana previously observed by the officers did not convert their acts into a general exploratory search.
Coolidge states that where an otherwise lawful search is in progress and police come upon a piece of evidence, "it would often be a needless inconvenience and sometimes dangerous  to the evidence or to the police themselves  to require them to ignore it until they have obtained a warrant particularly describing it." It seems to me that a logical corollary to this rule is: if a police officer observes contraband while standing at a place where he has a right to be, it would be needless, sometimes dangerous, to the evidence or to the police themselves, and foolish to require a police officer to turn his back on the contraband, and leave it until he could obtain a warrant.
When a person exposes contraband to plain view, he should not be heard to complain that seizure without a warrant violates his Fourth Amendment rights. My *1348 view is strengthened by the holding of the United States Supreme Court in Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) where the Court, speaking through Mr. Justice Holmes, stated:
[T]he special protection accorded by the 4th Amendment to the people in their `persons, houses, papers, and effects' is not extended to the open fields. The distinction between the latter and the house is as old as the common law. 4 Bl.Com. 223, 225, 226. (265 U.S. at 59, 44 S.Ct. at 446, 68 L.Ed. at 900).
I am of the opinion that the facts in this case fall within the rule announced in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) in which the Court stated:
It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. (390 U.S. at 235, 88 S.Ct. at 993, 19 L.Ed.2d at 1069).
For the foregoing reasons, I dissent.
ROBERTSON and WALKER, JJ., join in this dissent.